54 F.3d 772
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Joseph BATTLE, Plaintiff-Appellant,
v.
DUKE UNIVERSITY; H. Keith H. Brodie; Thomas F. Keller;
Richard Staelin, Defendants-Appellees.
 No. 93-2128.
 United States Court of Appeals, Fourth Circuit.
 Argued April 3, 1995.
Decided May 15, 1995.
 
 ARGUED: Richard Woodson Rutherford, ANDERSON, RUTHERFORD, GEIL & SCHERER, L.L.P., Raleigh, North Carolina, for Appellant. Sally Patricia Paxton, FULBRIGHT & JAWORSKI, L.L.P., Washington, D.C., for Appellees.
 Before RUSSELL, WILKINS, and MICHAEL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Joseph Battle appeals the decisions of the district court dismissing most of his claims and granting summary judgment on the remaining claim in favor of Duke University (Duke) and certain of its officials.[1] We affirm.
 
 I.
 
 2
 Battle, a black male, was hired by Duke as an associate professor in the Fuqua School of Business in 1970. He complained in the early 1980s that he was the victim of racial discrimination, which resulted in his receiving compensation for salary inadequacies. Battle complained anew of racial discrimination and filed a charge with the Equal Employment Opportunity Commission (EEOC) in January 1986. The parties settled this claim in an agreement dated October 21, 1987 (the Agreement).
 
 
 3
 Under the Agreement, all of Battle's teaching duties and other responsibilities at Duke were terminated, and he relinquished any right to employment compensation or other benefits. In exchange, Battle received a financial settlement consisting of a lump-sum award and monthly payments over eight years. The Agreement also provided that the title "Professor of the Practice of Business Administration" would be conferred upon Battle for a period of three years, after which his title would become "Professor Emeritus of the Practice of Business Administration," although Battle had no duties or responsibilities under either title. The Agreement further allowed Battle to maintain an office on campus of Duke's choosing for up to eight years to use as Battle wished, along with a computer containing certain technical features. Within months of signing the Agreement, Battle was employed by North Carolina Central University where he later became a tenured professor.
 
 
 4
 In January 1988, Battle complained that he had not been officially notified of his new title and that it had not been publicly announced to the business school faculty. Battle also expressed discontent concerning the elimination of his secretarial assistance. He further complained that the computer was not received timely, was in poor condition, and did not meet all of the agreed specifications. Later, he alleged that Brodie breached a confidentiality provision of the Agreement by telling black faculty members at a meeting in May 1988 that Battle was leaving Duke in response to a question inquiring why Battle was not invited to the meeting.
 
 
 5
 When Duke moved Battle's office from the Fuqua School of Business to another building in the fall of 1988, Battle complained that mail service was not arranged for him there and that he received mail only after it was forwarded from the business school to his home address. Also, Battle asserted that Duke never provided him with a new computer after he moved. He additionally complained in October 1989 and subsequently that his name was not included in several publications and catalogues of the Fuqua School of Business that listed the names of faculty members.
 
 
 6
 Battle filed an EEOC charge in April 1990. After concluding that it lacked jurisdiction because no employment relationship existed between Duke and Battle, the EEOC issued a right-to-sue letter. Battle then filed this action in October 1990, alleging: retaliation in violation of Sec. 704(a) of Title VII of the Civil Rights Act of 1964, see 42 U.S.C.A. Sec. 2000e-3(a) (West 1994); racial discrimination and retaliation in violation of 42 U.S.C.A. Sec. 1981 (West 1981); conspiracy in violation of 42 U.S.C.A. Sec. 1985(3) (West 1994); unfair and deceptive trade practices in violation of N.C. Gen.Stat. Sec. 75-1.1 (Michie 1994); and breach of contract.
 
 II.
 
 7
 The district court dismissed most of Battle's claims under Federal Rule of Civil Procedure 12(c). First, the district court concluded that the actions Battle claimed violated Sec. 1981 were not actionable because they occurred after the formation of the contract and because they did not interfere with Battle's ability to enforce his contractual rights. See Patterson v. McLean Credit Union, 491 U.S. 164, 176-78 (1989).[2] Next, the district court dismissed the conspiracy claim under Sec. 1985(3) because corporate agents generally cannot conspire with a corporation (or, as here, an educational corporation) and because Battle failed to allege actions that would qualify as conduct outside the scope of any of the named agents' employment. See Buschi v. Kirven, 775 F.2d 1240, 1251-53 (4th Cir.1985). Also, the district court dismissed the claim of unfair and deceptive trade practices, ruling that the Agreement and the conduct of Duke officials on which Battle relied did not affect commerce. See N.C. Gen.Stat. Sec. 75-1.1(b). After discovery, the district court granted summary judgment on the Title VII claim, concluding that it was barred because Battle had failed to establish an independent discriminatory act that occurred within the 180-day period prior to the filing of the EEOC charge in April 1990 and that this failure defeated his claim under the continuing violation doctrine. See Woodard v. Lehman, 717 F.2d 909, 915 (4th Cir.1983) ("It is only where an actual violation has occurred within [the] requisite time period that under any possible circumstances the theory of continuing violation is sustainable."). Finally, it dismissed without prejudice the breach of contract claim to allow Battle to file that cause of action against Duke in state court. Battle v. Duke Univ., C/A No. 1:90CV00512 (M.D.N.C. Aug. 5, 1991) (dismissal order); Battle v. Duke Univ., C/A No. 1:90CV00512 (M.D.N.C. July 28, 1993) (summary judgment order).
 
 
 8
 After careful consideration, we agree with the result reached by the district court and affirm.[3]
 
 AFFIRMED
 
 
 [1]
 The officials were President H. Keith H. Brodie, Fuqua School of Business Dean Thomas F. Keller, and Fuqua School of Business Associate Dean Richard Staelin
 
 
 [2]
 The district court also found, and the Supreme Court later conclusively established, that the 1991 amendment to Sec. 1981 does not apply retroactively. See Rivers v. Roadway Express, Inc., 114 S.Ct. 1510, 1519 (1994) ("Patterson provides the authoritative interpretation of the phrase 'make and enforce contracts' in the Civil Rights Act of 1866 before the 1991 amendment went into effect on November 21, 1991.")
 Battle attempts to escape the import of Patterson on this claim by additionally alleging--for the first time on appeal--that conduct of Duke and its officials subsequent to the signing of the Agreement indicates that Battle was denied a promotion in his employment with Duke. See Patterson, 491 U.S. at 185 (promotion claim actionable under Sec. 1981 only when "the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer"). We decline to address this argument because it was not raised in the district court, and Battle has not argued that exceptional circumstances exist to justify our consideration of this issue. See Muth v. United States, 1 F.3d 246, 250 (4th Cir.1993).
 
 
 [3]
 Given our disposition of this case, we need not consider an issue not reached by the district court: whether Battle was an "employee" of Duke within the meaning of Title VII after the effective date of the Agreement. See 42 U.S.C.A. Sec. 2000e(f) (West 1994)