UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HOBET MINING, INCORPORATED, a
corporation,
Plaintiff-Appellee,

v.

No. 98-1090

LOCAL 2286, UNITED MINE
WORKERS OF AMERICA; LOCAL 5817,
UNITED MINE WORKERS  OF AMERICA,
Defendants-Appellants.

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Charles H. Haden II, Chief District Judge.
(CA-96-36-2)

Submitted: December 8, 1998

Decided: December 31, 1998

Before HAMILTON, WILLIAMS, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Kevin F. Fagan, DISTRICT 17, UMWA, Charleston, West Virginia,
for Appellants. Mark A. Carter, Christopher L. Slaughter, HEENAN,
ALTHEN & ROLES, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Local Union 2286 and Local Union 5817, United Mine Workers of America, ("Locals" or "Unions"), appeal from the district court's judgment order entering the jury's finding in favor of Hobet Mining, Inc., and against the Locals in the combined amount of $500,000 based upon the Unions' illegal work stoppages.[1] On appeal, the Unions allege that the district court committed reversible error because it incorrectly instructed the jury. For the reasons that follow, we affirm.

Hobet sued the Locals under Section 301 of the Labor Management Relations Act; the district court found the Unions liable for conducting illegal work stoppages and the parties proceeded to a jury trial on the sole issue as to the amount of damages. James Pye, Hobet's expert witness on damages, testified that because of the illegal work stoppages Hobet was prevented from mining and selling its coal on the "spot market"[2] for approximately five to seven dollars a pound, which Pye testified was a conservative price estimate as the price was below what Hobet could receive from a long term supply contract. Although Hobet did not rely on or enter into evidence any long term supply contracts to show the financial losses it suffered, the Unions' counsel, on cross-examination, did get Pye to admit that such supply contracts often contain force majeure clauses, which would suspend Hobet's obligation to supply coal if certain circumstances, over which the company had no control, occurred. In his closing argument, the Unions' attorney argued that the work stoppages would be covered under the force majeure clauses of Hobet's supply contracts and therefore the company suffered no damage:

_____

[1] The jury found against Local 2286 in the amount of $375,000 and against Local 5817 for $125,000.
[2] "Spot market" refers to the price coal could be bought and sold on the open market at a given time.

2

Now there was no evidence, there was no evidence that the company suffered any damages in another respect as a result of these three work stoppages. Did you hear any evidence that the company lost any customers? There is no evidence with respect to that. Did you hear any evidence that the company lost any contracts as a result of the three work stoppages. There was no evidence of that.

On the contrary, Mr. Pye [Hobet's damages expert witness] testified that the contracts that Hobet Mining typically had with its companies contained a force majeure clause, and the judge will instruct you and I will tell you what my version is. The evidence established what a force majeure clause is and that is where a situation arises where the contracting party cannot control something which prevents it from meeting its contractual obligation, and I will submit to you that a work stoppage would be a circumstance. Where are those contracts and where is the testimony or evidence that a force majeure clause was not in any of the contracts Hobet Mining had with its, quote, buyers.

(J.A. at 183-84.)

At the conclusion of the Locals' closing argument, the following bench conference occurred between the trial judge and the Locals' counsel Mr. Fagan:

THE COURT: I think you contradicted the instructions of the Court, Mr. Fagan.

MR. FAGAN: I'm sorry.

THE COURT: You instructed the jury and your version was that a voluntary work stoppage by one party could result in a force majeure to the other. On these facts and on the law of this case, a voluntary illegal strike does not excuse one from performance of the obligation under a contract.

MR. FAGAN: Okay, Your Honor, I apologize for my transgression there and it was not intentional and I was not attempting to violate your authority.

3

THE COURT: It just requires that I explain that to the jury.

MR. FAGAN: I'm sorry.

(J.A. at 186-87.) Then the court instructed the jury:

THE COURT: Ladies and gentlemen, I think one of the counsel inadvertently misspoke on an issue and I find it necessary to revisit that issue of a force majeure, which is some sort of accidental unplanned-for event which might affect one[']s ability to meet the obligations of the contract. And I instruct you that the voluntary intentional work stoppage done by one party to another party is not a force majeure event that would excuse performance of a contract. So under the facts and law of this case, such a work stoppage would not be an excusable event under that theory.

You have anything further? [Neither counsel responded.]

(J.A. at 187.)

The Locals argue that the trial judge's above instruction to the jury was erroneous as a matter of law and they seek to have the matter remanded to the district court for a new trial. We decline to grant such relief and affirm the judgment of the district court for several reasons.

First, it is uncontroverted that the Locals failed to object to the district court's instruction regarding the effect of a force majeure clause. See Fed. R. Civ. P. 51, 46. As this Court has repeatedly held, issues raised for the first time on appeal generally will not be considered. See, e.g., Eastern Auto Distribs., Inc. v. Peugeot Motors of Am., Inc., 795 F.2d 329, 336 (4th Cir. 1986) (holding that because plaintiff failed to object to absence of certain instructions in the trial court, appellate review foreclosed). Based on the record before this Court, there are no exceptional circumstances justifying departure from the general rule.[3]

_____

[3] We do not find that refusal to consider this issue for the first time on appeal would be "plain error or . . . result in a fundamental miscarriage of justice." Muth v. United States, 1 F.3d 246, 250 (4th Cir. 1993).

4

Second, even if the Locals objected to the district court's instruction and the instruction was in fact erroneous, they suffered no prejudice because Hobet did not claim or present any evidence regarding damages suffered from any of its supply contracts. Rather, Hobet presented evidence showing the amount of coal that was not collected, as a result of the Locals' illegal activities, and the dollar amounts per ton it could have sold the coal on the spot market. Whether Hobet suffered a loss or not in its long term supply contracts was simply irrelevant to the jury's damage findings. See Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 775 (4th Cir. 1997) (holding that a judgment will be reversed for an erroneous jury instruction only if the error is prejudicial, based upon a review of the record as a whole).

Accordingly, we affirm the judgment of the district court. We grant the parties' motion to decide the appeal without oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED