**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

OLIVER W. ROUND, JR.,
Plaintiff-Appellant,

v.

No. 98-2344

THE BOEING NORTH AMERICAN
SERVICES, INCORPORATED,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CA-98-237-A)

Argued: May 6, 1999

Decided: June 23, 1999

Before MURNAGHAN, WILLIAMS, and MICHAEL,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Clara Anne Williamson, Alexandria, Virginia, for Appel-
lant. Curtis Lee Mack, MACK & MCLEAN, P.A., Atlanta, Georgia,
for Appellee. **ON BRIEF:** Sonia Elizabeth Hill, MACK &
MCLEAN, P.A., Atlanta, Georgia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Oliver W. Round, Jr. filed suit in the Circuit Court of Fairfax County, Virginia claiming that his former employer, The Boeing North American Services, Inc. (Boeing), defamed him in an employment termination letter by accusing him of signing false time sheets and defrauding the government, and that Boeing did so with the knowledge that such statements were false or, in the alternative, without reasonable grounds to believe the statements were true. Round also claimed that the accusatory statements constituted insulting words as made actionable by Va. Code Ann. § 8.01-45 (Michie 1992).

Boeing removed Round's suit to the United States District Court for the Eastern District of Virginia and moved for summary judgment. The district court granted summary judgment to Boeing after determining that Boeing possessed a qualified privilege under Virginia law to communicate to its management the accusations against Round and that Round failed to overcome the privilege by adducing evidence of malice on the part of Boeing. The district court subsequently denied Round's motion to reconsider and awarded Boeing its costs of defending Round's suit. Round noted a timely appeal of these rulings. Finding no error, we affirm.

Round began his employment with Rockwell International Corporation in March of 1992 as a plumber. Round's duties included performing preventative maintenance and repairing plumbing, heating, and air conditioning systems. In December of 1996, Rockwell International Corporation began operations as The Boeing North American Services, Inc., and Round became an employee of Boeing. At the time of his discharge, Round worked at a government site maintained by Boeing named International Point (IP) in Herndon, Virginia. Round's normal working hours were from 6:30 a.m. to 2:30 p.m., with no lunch break. As part of his job responsibilities, Round was required

2

to record accurately on company timesheets the time he spent working on job-related activities.

On July 24, 1997, Boeing received an anonymous letter accusing several employees of falsifying their time sheets. The letter specifically stated that Round was "said to be leaving at least a half hour early each day, yet recording 8 hours on his timesheet." (J.A. at 122.) Upon receipt of the letter, Boeing's Washington Operations Manager, Kenneth T. Alexander, initiated an investigation led by Boeing's heads of security, Luther Nossett and Edward Stevens. As part of the investigation, Nossett and Stevens interviewed two individuals identified in the anonymous letter as possessing knowledge of the timesheet violations. These two individuals confirmed that some of the allegations in the letter had validity and should be investigated. Thereafter, Boeing obtained turnstile data from the government for the main building at the IP facility between April 1, 1997 and July 17, 1997, for all IP employees. The turnstile recorded the time each employee entered and exited the building. In reviewing the turnstile data, Stevens looked at the time of entry and the time of exit and considered the time between the entries as time spent working.

After examining the turnstile data on Round, Stevens determined that there were more than twenty-five occasions in which the turnstile indicated that Round had worked fewer than the eight hours recorded on his timesheet. Stevens subsequently conducted surveillance on Round on August 22 and 29, 1997. On August 29, Stevens personally observed Round arriving at the facility at 6:25 a.m. and leaving at 1:54 p.m. Based on these arrival and departure times, Round was at the worksite for 7 hours and 29 minutes. Nevertheless, Round recorded that he worked eight hours on August 29.

On September 3, 1997, Stevens met with Round to obtain his explanation of the events and information obtained during the investigation. Stevens told Round that Boeing had received an anonymous report that Round was leaving work earlier than his timesheet indicated and that turnstile data confirmed his timesheet misdocumentation. Stevens drew Round's attention to the previous Friday, in which he had witnessed Round coming in at 6:25 a.m. and leaving at 1:54 p.m. Round repeatedly stated that he couldn't remember leaving work

early that day.[1] Stevens also asked Round if he could account for several other instances in which it appeared that he had left work early and was overcharging the government. Round could not recall what happened on the specific dates that Stevens had mentioned. Instead, Round explained that he would often engage in job-related discussions with one of the guards outside the building for five or ten minutes before walking through the turnstile. Round also explained that he was often called to do work outside of the turnstiles, such as at the cafeteria, the cooling tower, and the generator building, and he would not reenter the building through the turnstiles before leaving for the day. At no point in the interview, however, did Round give Stevens the names of any Boeing employees who could verify his explanations. At the conclusion of the meeting, Stevens informed Round that he was being suspended with pay pending the completion of the investigation.

Alexander reviewed both the tape and the transcript of Stevens's interview with Round. Based upon this interview, the turnstile data, and the interview with the two employees named in the anonymous letter, Alexander concluded that Round was signing false timesheets and defrauding the government. After consulting with Boeing's Vice President, Graeme Calow, Alexander decided to terminate Round's employment with Boeing. Alexander then had Sandy Ammons, Boeing's Human Resources Manager, prepare Round's termination letter.[2] The last paragraph of the letter gave Round the opportunity to provide any information relevant to Alexander's decision.

On September 5, 1997, Round was called into Alexander's office. Ammons was also present in the office. Alexander informed Round

---

[1] On September 4, 1997, Stevens received a call from Round explaining that he had left early on Friday, August 29, because he had defecated in his pants. Round acknowledged that he failed to report this incident to his immediate supervisors or anyone else on August 29, and that he had not amended his timesheet upon returning to work. Stevens relayed this information to Alexander. Neither Alexander nor Stevens believed Round's explanation.

[2] Prior to preparing Round's termination letter, Ammons had investigated whether Round may have split his work with one of the other Boeing facilities and concluded that he did not.

that he was being terminated for timesheet violations. Alexander also gave Round his termination letter, which contained accusations of fraud and intentional timesheet falsification, and asked Round if he could explain away any of the accusations in the letter. Round replied, "I don't know," and remained silent for the remainder of the meeting. (J.A. at 97.) In addition to Alexander, Round's termination letter was distributed to the following members of Boeing's management, in accordance with Boeing's policy regarding the reporting of alleged violations by Boeing's employees: John Davidson (President), Scott Drach (People Manager), Calow, and Ammons. Round acknowledged that he had no evidence that anyone other than these five persons received a copy of the termination letter.

In January 1998, Round brought the instant suit seeking recovery for defamation and for insulting words as made actionable by § 8.01-45 of the Virginia Code (the Insulting Words Statute).[3] Round based his suit on the accusations in the termination letter, and in particular, the following passage:

> While this is your first detected violation of company time sheet policy, there are actually more than 25 total incidents in which the Government has been defrauded by paying you a salary for time you did not work. . . . They will require that Boeing take immediate corrective steps to reimburse the Government for money paid to you fraudulently for time not worked.
>
> . . . Yet, it is clear that you have repeatedly signed many false timesheets and accepted money for time you did not work.

(J.A. at 347.) Round later admitted that he had no evidence suggesting that Alexander and Stevens had any reason to believe that the statements were false.

_____

[3] Section 8.01-45 provides: "All words shall be actionable which from their usual construction and common acceptance are construed as insults and tend to violence and breach of the peace." Va. Code Ann. § 8.01-45 (Michie 1992).

5

In response to Round's complaint, Boeing filed a motion for summary judgment. In its review of Boeing's motion, the district court determined that under Virginia law, Boeing possessed a qualified privilege to communicate the reasons for Round's termination to its employees, even if the underlying facts turned out to be false, so long as it acted in good faith. The district court concluded that Boeing had developed an honest belief that Round had submitted inaccurate timesheets, based upon the anonymous letter, the turnstile data, the interview with other employees, and Stevens's interview with Round. Therefore, Boeing possessed a qualified privilege to circulate Round's termination letter containing accusations of timesheet misdocumentation to a controlled group of supervisors, managers, and security officers. The district court also concluded that viewing the record in the light most favorable to Round, he had failed to adduce any evidence that Boeing had acted with malice that would destroy the privilege. Accordingly, the district court held that Boeing's qualified privilege defeated both Round's defamation claim and his claim under the Insulting Words Statute and granted summary judgment to Boeing. The district court subsequently denied Round's motion for reconsideration and granted Boeing's application for costs.

Round filed a timely notice of appeal of these rulings. Before us, Round asserts that the district court erred in finding that Boeing possessed a qualified privilege to communicate the accusations against Round because Boeing lacked an honest, good faith belief in the truth of those accusations due to its reliance on questionable sources of information and because it failed to interview Round's supervisor, guards, cafeteria workers, generator employees, or cooling tower employees who could have verified Round's explanations.[4] Round also argues that even if Boeing enjoyed a qualified privilege when it

_____

[4] Round also argues on appeal that while the termination letter was not disseminated to the government, the accusations of fraud and timesheet falsification contained therein were and, therefore, defeated Boeing's qualified privilege. Because the record indicates that Round did not raise this issue in the district court below, we will not consider this issue on appeal. See Muth v. United States, 1 F.3d 246, 250 (4th Cir. 1993) (noting that issues not raised below generally will not be considered on appeal unless refusing to consider them would be plain error or would result in a fundamental miscarriage of justice).

communicated the accusations against Round, it abused the privilege when it "used stronger and more violent language than necessary, and which was unnecessarily defamatory of Round and communicated the statements without believing them to be true and with a reckless disregard for the truth." (Appellant's Br. at 34.)

Summary judgment is appropriate if "`there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" Celotex Corp v. Catrett , 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). Although"[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), "there must be evidence on which the jury could reasonably find for the [non-movant]," id. at 252. This Court reviews a grant of summary judgment de novo. See Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988).

We have reviewed the record, briefs, and pertinent case law on this matter, and we have had the benefit of oral argument. Our careful de novo review persuades us that the rulings of the district court were correct. Accordingly, we affirm on the reasoning set forth in the district court's opinions. See Round v. Boeing N. Am. Servs., Inc., No. CA-98-237-A (E.D. Va. Aug. 7 & Oct. 2, 1998).

AFFIRMED