UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JAMES L. PRATT; MICHAEL T.
ANGELINI; ERIC J. BROWN,
*Plaintiffs-Appellants,*

and

ALESHIA V.M. HARRIS,
*Plaintiff,*

v.

NATIONAL POSTAL MAILHANDLERS
UNION, Local 305; UNITED STATES
POSTAL SERVICE,
*Defendants-Appellees.*

No. 00-2424

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-99-1876-A)

Argued: October 29, 2001

Decided: January 10, 2002

Before WIDENER, NIEMEYER, and MOTZ, Circuit Judges.

___

Affirmed by unpublished opinion. Judge Niemeyer wrote the opinion,
in which Judge Widener and Judge Motz joined.

___

## COUNSEL

**ARGUED:** Michael Ernest Avakian, SMETANA & AVAKIAN,
Springfield, Virginia, for Appellants. Andrew A. Chakeres, Capital

Metro & Mid Atlantic Area Law Office, UNITED STATES POSTAL SERVICE, Washington, D.C., for Appellee Postal Service; Thamer Eugene Temple, III, MCSWEENEY & CRUMP, P.C., Richmond, Virginia, for Appellee Union. **ON BRIEF:** J. Raymond Sparrow, SHUMATE, KRAFTSON & SPARROW, P.C., Fairfax, Virginia, for Appellants. Helen F. Fahey, United States Attorney, Jeri Kaylene Somers, Assistant United States Attorney, Alexandria, Virginia; Thomas J. Marshall, Managing Counsel, Capital Metro & Mid Atlantic Area Law Office, UNITED STATES POSTAL SERVICE, Washington, D.C., for Appellee Postal Service. G. William Norris, MCSWEENEY & CRUMP, P.C., Richmond, Virginia, for Appellee Union.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

NIEMEYER, Circuit Judge:

James Pratt, Michael Angelini, and Eric Brown, United States Postal Service employees, commenced this action against the Postal Service and the National Postal Mailhandlers Union (the "Union"), of which they were members, to challenge a settlement agreement reached between the Postal Service and the Union to adjust their seniority. The district court granted summary judgment to the Postal Service and the Union. We affirm.

I

Pratt, Angelini, and Brown, who were full-time mailhandlers at the Postal Service's Processing and Distribution Center in Merrifield, Virginia, voluntarily transferred to other positions within the Postal Service during 1998 and 1999. Pratt became a custodian at the Stafford, Virginia post office; Angelini became a mailhandler in Tampa, Florida; and Brown became a letter carrier in Springfield, Virginia.

Before they transferred, they discussed the risks and consequences of leaving their positions in Merrifield with Union leadership. In each case, the individual was advised that, even if he returned within one year, he might lose his seniority, but that he could file a grievance with the Postal Service to seek to regain his seniority.

Within a year of leaving their positions at Merrifield, Pratt, Angelini, and Brown returned, at various times, to the Merrifield facility. Upon their return, each was converted from full-time status to "part-time flexible" status and placed on the bottom of the seniority list at Merrifield. All three filed grievances with the Postal Service, seeking to be restored to full-time status and to the seniority positions that they had held before they transferred from Merrifield. The Postal Service and the Union settled each of the grievances by restoring the employee to full-time status and by restoring his seniority to the position he had held before he transferred from Merrifield.

Other part-time flexible and full-time employees who were bypassed by these grievance settlements reached by the Postal Service and the Union, filed a class action grievance against the Postal Service through their shop steward, Dwight Burnside. The Burnside grievance asserted that the settlement agreements between the Postal Service and the Union with respect to Pratt, Angelini, and Brown violated the terms of the applicable collective bargaining agreement between the Postal Service and the Union. Upon reviewing the matter closer, the Postal Service and the Union agreed that they had made a mistake in the manner in which they settled Pratt, Angelini, and Brown's grievances and that those settlements misapplied the applicable provisions of the collective bargaining agreement. Accordingly, the Postal Service and the Union settled the Burnside grievance by agreeing to vacate the earlier settlement agreements involving Pratt, Angelini, and Brown, thereby returning those three employees to part-time flexible status with entry-level seniority, and to withdraw the Burnside grievance.

Thereafter, Pratt, Angelini, and Brown commenced this action against both the Postal Service and the Union, alleging that the Postal Service breached its collective bargaining agreement with the Union and that the Union, by agreeing to the Burnside settlement, breached its duty of fair representation. They alleged that the Union's agree-

ment furthered the political ambitions of officers and undermined the provisions of the collective bargaining agreement. The plaintiffs also alleged intentional infliction of emotional distress.

On the motion of the Postal Service and the Union for summary judgment, the district court concluded that the Postal Service and the Union had acted properly in voiding the grievance settlements reached between them with respect to Pratt, Angelini, and Brown. In reaching this conclusion, the district court found that the Postal Service and the Union had interpreted the collective bargaining agreement correctly. The district court also concluded that the Union, by agreeing to void the Pratt, Angelini, and Brown grievance settlements, did not violate its duty of fair representation to Union members. Finally, the district court dismissed the employees' claim for intentional infliction of emotional distress because the employees had failed to produce evidence that the defendants' conduct was "outrageous and intolerable."

From the district court's judgment, Pratt, Angelini, and Brown filed this appeal.

## II

Pratt, Angelini, and Brown commenced this typical hybrid action against the Postal Service and the Union, alleging that the Postal Service breached the collective bargaining agreement, in violation of 39 U.S.C. § 1208 (the Postal Service's analog for § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185), and that the Union breached its duty of fair representation. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65 (1983) (describing the interactions of claims in a "hybrid § 301/fair representation claim"). To prevail against either party in a hybrid suit, the plaintiffs must prevail against both parties. They must demonstrate both that the revocation of their seniority was contrary to the collective bargaining agreement and that the Union breached its duty of fair representation when it agreed with the Postal Service's interpretation of the collective bargaining agreement. *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570-71 (1976); *Adcox v. Teledyne, Inc.*, 21 F.3d 1381, 1386 (6th Cir. 1994).

After reviewing the record and considering the appellants' arguments, we find that the appellants cannot demonstrate that the Union breached its duty of fair representation. Both parties to the collective bargaining agreement, the Postal Service and the Union, agreed to what they believed was the proper application of the collective bargaining agreement in establishing and preserving seniority rights. Their settlement of the Burnside grievance, which voided their earlier settlements with respect to Pratt, Angelini, and Brown, reflected their effort to correct an error that they agreed they had made in settling the earlier grievances. When reviewed against the language of the collective bargaining agreement, we conclude that the positions of the Postal Service and the Union were rational, indeed perhaps indicated, although we need not render any ultimate opinion on the "correct" interpretation of the collective bargaining agreement. *See Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 78 (1991) (stating that a union does not breach its duty of fair representation unless it acts "so far outside a wide range of reasonableness that it is wholly irrational or arbitrary" (internal quotation marks and citation omitted)).

An underlying principle of the collective bargaining agreement, described in Article 12.2D2, is that seniority "is computed from the date of appointment in the craft and continues to accrue so long as service in the craft . . . is uninterrupted." If service is interrupted by voluntary transfer from one postal installation to another, or from one craft to another, Article 12.2F1 requires the employees to begin a new period of seniority. Following the same general principle, Article 12.2G3 of the collective bargaining agreement requires employees changing from another craft to a mailhandler craft to begin a new period of seniority as well.

There is no doubt that Pratt, Angelini, and Brown interrupted their service in their craft and installation when they transferred to other positions within the Postal Service. Accordingly, Articles 12.2F1 and 12.2G3 of the collective bargaining agreement support the conclusion that these employees were required to begin a new period of seniority when they returned to the mailhandler craft at Merrifield.

The wrinkle, according to Pratt, Angelini, and Brown, is a limited exception to the seniority rule, created by Article 12.2G7b, to preserve seniority for employees who transfer to a position outside of the

"bargaining unit" and return within one year. Pratt, Angelini, and Brown argue that "bargaining unit" as used in 12.2G7b refers to mailhandlers in Merrifield. The Postal Service and the Union, however, agreed that the "bargaining unit" referred to all *non-supervisory* positions. That interpretation was how the "bargaining unit" was always understood by the parties to the collective bargaining agreement.

The Postal Service and the Union originally negotiated the terms of Article 12.2G7 as part of the 1973 omnibus collective bargaining agreement. At that time, a major theme in the negotiations was to encourage employees to seek management positions. To that end, the parties agreed to make an employee's decision to pursue a management position less risky. Employees leaving the rank and file for management positions were therefore given a one-year grace period during which they could return to their old positions without losing seniority. Since 1973, negotiators have never suggested that Article 12.2G7 gives employees who leave the mailhandler craft for non-management positions a grace period during which they could return without losing seniority. To the contrary, the Union negotiators have continued to recognize that Article 12.2G7 is an incentive provision to encourage employees to try their hand in management. They therefore have always understood positions outside the "bargaining unit" to refer to managerial and supervisory positions.

In addition, the interpretation given to the collective bargaining agreement by the Postal Service and the Union is consistent with the structure of the collective bargaining agreement. Article 12.2G3 requires an employee changing from another craft to mailhandler to begin a new period of seniority. There is no exception for a mailhandler who returns to the mailhandler craft after leaving the craft for less than one year. This general rule — that employees who leave a craft or installation lose their seniority — supports the interpretation of "bargaining unit" that makes the Article 12.2G7 exception more narrow than a universal grace period for mailhandlers to experiment with new positions of all types.

Accordingly, we conclude that the Postal Service and the Union's interpretation clearly falls within a range of reasonableness. And because of that conclusion, we find no breach by the Union of its duty of fair representation. In view of the legal principle that plaintiffs

must establish liability of both the Postal Service and the Union to succeed on a hybrid action in court, we need not reach the issue of whether the Postal Service's revocation of Pratt, Angelini, and Brown's restored seniority was actually "correct" under the collective bargaining agreement. *See Hines*, 424 U.S. at 570-71.*

Having concluded that the position taken by the Postal Service and the Union was rational, we also conclude that Pratt, Angelini, and Brown's claims for intentional infliction of emotional distress were properly dismissed. Pratt, Angelini, and Brown have not produced any evidence to demonstrate that the defendants' conduct in reaching the Burnside settlement was "outrageous and intolerable." *See Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991) (requiring clear and convincing evidence that the wrongdoer's conduct was intentional or reckless, that the conduct was "outrageous and intolerable," and that the conduct caused severe emotional distress).

Finally, Pratt, Angelini, and Brown contend that the district court abused its discretion when it taxed costs against them pursuant to Federal Rule of Civil Procedure 54(d) and Local Rule 54(D) of the Eastern District of Virginia. They assert that the taxation was improper because the Bill of Costs was not filed within the time prescribed by Local Rule. However, because Pratt, Angelini, and Brown failed to raise this issue in the district court, we do not consider it here. *See Grossman v. Comm'r of Internal Revenue*, 182 F.3d 275, 280-81 (4th Cir. 1999) (citing *Muth v. United States*, 1 F.3d 246 (4th Cir. 1993)).

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.

---

*Pratt, Angelini and Brown also argue that the Union's action was discriminatorily biased. They allege that two Union stewards were among the mailhandlers whose status was improved with the Burnside settlement. They also allege an animus toward Pratt. Because these appellants have not produced evidence connecting either of these two considerations to the Union's decision, however, both claims must fail.