**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-1986

MICHAEL B. LANIER,

Plaintiff - Appellant,

versus

NORFOLK SOUTHERN CORPORATION; NORFOLK SOUTHERN
RAILWAY COMPANY; BENJAMIN AIKEN; MIKE FORD;
JAMES THORNTON,

Defendants - Appellees.

Appeal from the United States District Court for the District of
South Carolina, at Aiken.  Margaret B. Seymour, District Judge.
(1:05-cv-03476-MBS)

Argued:  September 26, 2007       Decided:  December 5, 2007

Before MOTZ and KING, Circuit Judges, and Robert J. CONRAD, Jr.,
Chief United States District Judge for the Western District of
North Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Douglas M. Schmidt, New Orleans, Louisiana, for Appellant.
W. Howard Boyd, Jr., GALLIVAN, WHITE & BOYD, P.A., Greenville,
South Carolina, for Appellees.  **ON BRIEF:** Daniel B. White, Ronald
G. Tate, Jr., Jennifer E. Johnsen, Thomas E. Vanderbloemen,
GALLIVAN, WHITE & BOYD, P.A., Greenville, South Carolina, for
Appellees Norfolk Southern Corporation and Norfolk Southern Railway
Company; Gray T. Culbreath, COLLINS & LACY, P.C., Columbia, South
Carolina, for Appellee Benjamin Aiken; Monteith Powell Todd,

SOWELL, GRAY, STEPP & LAFFITTE, L.L.C., Columbia, South Carolina, for Appellee Mike Ford; J. Arthur Davison, FULCHER HAGLER, L.L.P., Augusta, Georgia, for Appellee James Thornton.

————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Michael B. Lanier appeals the district court's order dismissing his case and asserts that the district court incorrectly found that no duty was owed to him under South Carolina tort law. Lanier also argues for the first time on appeal that jurisdiction under the Class Action Fairness Act ("CAFA") was improper. We find that jurisdiction was proper under CAFA and affirm the district court's order.

I.

On January 5, 2005, three employees of Norfolk Southern Corporation and Norfolk Southern Railway Company (collectively referred to as "Norfolk") took a local train to the Avondale Mills, Inc. ("Avondale") facility in Graniteville, South Carolina, to deliver and pick up railroad cars. In order to deliver and pick up railroad cars to and from Avondale, the Norfolk employees had to open a rail switch located on the main railroad line to a side rail that leads directly into the Avondale facility. While performing these tasks, the employees realized that they could not finish their work at Avondale without violating the 12-hour work rule mandated by federal law. As a result, the employees parked the train at the Avondale facility until they could resume their work the following morning. Because the train was too long to fit inside the Avondale facility, the employees placed a locomotive and

3

a couple of railroad cars on the side rail in close proximity to the main railroad.

In the early hours of January 6, 2005, another train owned and operated by Norfolk was traveling toward Graniteville on the main railroad line. This train consisted of 3 locomotives and 48 railroad cars, some of which contained chlorine. Because the employees failed to realign the main switch to its proper position, the train was diverted from the main line to the side rail colliding with the other railroad cars left on the side rail the night before.

The impact of the collision caused some of the railroad cars containing chlorine to rupture and chlorine gas to be released. The chlorine gas damaged Avondale's plant and prevented Avondale from maintaining its production level. Avondale laid off some employees and eventually decided to close its facilities permanently. On December 8, 2005, Lanier, an employee of Avondale, filed a class action complaint for damages against Norfolk in the South Carolina Court of Common Pleas. Lanier's putative class consisted of former Avondale employees who were laid off or discharged from their employment subsequent to the train derailment. Lanier contended that Norfolk's negligence resulted in the derailment, the release of chlorine gas, and the disruption of Avondale's production capacity causing employee layoffs.

Norfolk filed a notice of removal on December 13, 2005. Norfolk argued that removal was proper under CAFA, 28 U.S.C.A. § 1453(b) (West 2006), among other grounds. Norfolk asserted that the allegations of injuries and damages in Lanier's complaint met the $5 million amount in controversy threshold and satisfied the minimal diversity requirement. Lanier moved to remand on January 11, 2006, but failed to respond to Norfolk's argument that the court had jurisdiction under CAFA in his motion.

On July 5, 2006, the district court ordered that Lanier's motion to remand be denied and Norfolk's motion to dismiss be granted. The district court concluded that Lanier's proposed class met the jurisdictional requirements of CAFA and thus removal was proper. The district court thereafter concluded that Lanier's complaint failed to state a claim upon which relief could be granted because Norfolk owed no legal duty to Lanier and the putative class members.

On July 17, 2006, Lanier filed a motion for new trial, or in the alternative, for relief from the court's order. The district court denied the motion and continued to find that Norfolk did not owe Lanier and the purported class any duty of care. Lanier thereafter timely filed his notice of appeal.

As with all questions implicating subject matter jurisdiction of federal courts, we review the denial of a motion to remand to state court de novo. Lontz v. Tharp, 413 F.3d 435, 439 (4th Cir. 2005). CAFA amended Title 28's provisions on diversity of citizenship and removal for certain class action cases. Section 1332(d) provides that

> district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant.

28 U.S.C.A. § 1332(d)(2)(A) (West 2006). For the district court to have original jurisdiction over a class action under CAFA, the proponent of removal must show minimal diversity, and it must be clear from the face of the complaint that the amount in controversy exceeds $5 million. See Wiggins v. North Am. Equitable Life Assur. Co., 644 F.2d 1014, 1016-17 (4th Cir. 1981) (ordinarily determining the jurisdictional amount from the plaintiff's complaint but also recognizing that "if it appears to a legal certainty that the plaintiff cannot recover the jurisdictional amount, the case will be dismissed for want of jurisdiction . . . . However, the legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim" (quoting McDonald v. Patton, 240 F.2d 424, 426 (4th Cir. 1957)); see also Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 448-

49 (7th Cir. 2005) (discussing the amount in controversy under CAFA and explaining that "[t]he question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties . . . . Once the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses federal jurisdiction").

The district court concluded that the amount in controversy was satisfied and minimal diversity between Lanier and Norfolk was present. Because Lanier's complaint indicated that the purported class consisted of at least 350 people seeking damages, it would take a minimum of $15,000 per person to exceed the $5 million amount in controversy.[1] Our review of the record shows that minimal diversity is present between the parties and there is nothing in the record that would support a finding to a legal certainty that the judgment would be less than $5 million.[2] Thus,

---

[1]Since Avondale closed the factory, the purported class could expand to over 2,000 employees. If that were the case, each plaintiff would need to recover a little over $2,000 per person to exceed the $5 million requirement. We find that Norfolk has met its burden of showing the amount in controversy will exceed $5 million.

[2]For the first time on appeal, Lanier argues that the local controversy exception under 28 U.S.C.A. § 1332(d)(4) applies. Section 1332(d)(4) states that a district court "shall decline to exercise jurisdiction" over a class action if greater than 2/3 of the class are from the state in which the action was filed; at least one defendant from whom significant relief is sought is from that same state; the principal injuries resulted from conduct within the same state; and that no other class actions have been filed asserting the same thing. 28 U.S.C.A. § 1332(d)(4) (West 2006). This court will generally not consider issues raised for

we conclude that jurisdiction exists under CAFA, and the district court correctly denied Lanier's motion to remand.

III.

The standard of review of a Rule 12(b)(6) dismissal is de novo. Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir. 1991). This Court will construe factual allegations in the nonmoving party's favor and will treat them as true, id., but is "not so bound with respect to [the complaint's] legal conclusions." Dist. 28, United Mine Workers, Inc. v. Wellmore Coal Corp., 609 F.2d 1083, 1085-86 (4th Cir. 1979). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 1969. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Id. at 1974.

_____

the first time on appeal. Muth v. United States, 1 F.3d 246, 250 (4th Cir. 1993). "Exceptions to this general rule are made only in very limited circumstances, such as where refusal to consider the newly-raised issue would be plain error or would result in a fundamental miscarriage of justice." Id. As Lanier did not raise this argument to the district court and provides no facts warranting a finding of exceptional circumstances, we do not consider this argument. Id.

In construing South Carolina tort law, the district court held that Norfolk owed no duty to Lanier or the putative class members for lost wages and thus Lanier failed to state a claim upon which relief could be granted. Lanier asserts, however, that the district court failed to consider the fact that Norfolk's long-standing supply contract with Avondale created a duty of care from Norfolk to Avondale and thus derivatively to Avondale's employees. Lanier also contends that Norfolk owed a duty to Avondale's employees because a factory closing creating loss for Avondale employees was a foreseeable consequence of negligently carrying ultrahazardous materials.

Under South Carolina law, "[a] cause of action for negligence requires: (1) the existence of a duty on the part of the defendant to protect the plaintiff; (2) the failure of the defendant to discharge the duty; (3) injury to the plaintiff resulting from the defendant's failure to perform." South Carolina State Ports Auth. v. Booz-Allen & Hamilton, Inc., 346 S.E.2d 324, 325 (S.C. 1986). "The key inquiry is what duty, if any, is owed by the tortfeasor to the third party." Barker v. Sauls, 345 S.E.2d 244, 244 (S.C. 1986). In order for a duty to exist, the parties must have a relationship recognized by law. This duty may be derived from the tortfeasor's contractual relationship with another.[3] See id.

_____

[3]Lanier asserts that the long-standing supply contract between Norfolk and Avondale creates a duty to the employees. However, Lanier failed to allege this contractual relationship in his

9

While the employees' job losses were arguably foreseeable, tort law does not stretch so far as to impose liability on Norfolk for the losses of those with whom it has no direct relationship. Booz-Allen, 346 S.E.2d at 325 ("Foreseeability of injury, in the absence of a duty to prevent that injury, is an insufficient basis on which to rest liability. Foreseeability itself does not give rise to a duty." (citations omitted)). To avoid disproportionate liability, South Carolina courts have cut off recovery for plaintiffs who suffer economic loss, but have no direct physical injury and no direct relationship with the defendant. See Hubbard & Felix, The South Carolina Law of Torts 49 (3d ed. 2004) ("[P]ersons who suffer indirect economic loss from loss of employment as a result of injury to the enterprise where they work cannot usually recover for such loss.").[4] We hold that South

---

complaint. Our standard of review on a 12(b)(6) motion is to "test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). As this fact was not included in the complaint, we will not consider this argument on appeal.

[4]See also Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303 (1927) (holding no right to recover for economic loss resulting from defendant's injury to a third party with whom plaintiff has contractual business relationship); Booz-Allen, 346 S.E.2d at 324 (holding no duty was owed to pilots and longshoremen whose work suffered as a result of a consultant's opinion that the Charleston port would not have as much traffic as Savannah); Edens & Avant Inv. Props., Inc. v. Amerada Hess Corp., 456 S.E.2d 406 (S.C. Ct. App. 1995) (holding no liability in negligence for plaintiff's out-of-pocket "development costs" allegedly lost as a result of defendant's pollution injury to property which plaintiff had option to purchase); Willis, 314 S.E.2d at 919 (holding no liability for the loss of eight days of work due to a train derailment).

10

Carolina courts would find the nature of Lanier's indirect economic loss too remote for recovery in tort.  See Booz-Allen, 346 S.E.2d at 326 ("The concept of duty in tort liability must not be extended beyond reasonable limits."); Willis v. Georgia N. Ry. Co., 314 S.E.2d 919, 919 (Ga. Ct. App. 1984) (holding in a similar train derailment case that the "damages sought by appellants have consistently been held too remote in nature for recovery").  We conclude that Lanier has failed to plead enough facts to state a claim that is plausible on its face.  Accordingly, we find that the court properly granted Norfolk's Rule 12(b)(6) motion to dismiss for failure to state a claim.

## IV.

For the foregoing reasons, we affirm the decision of the district court.

AFFIRMED