**WARMINSTER TOWNSHIP MUNICIPAL AUTHORITY, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

No. 95–CV–277.

United States District Court, E.D. Pennsylvania.

Oct. 20, 1995.

Robert H. Nemeroff, Jaffe, Friedman, Schuman, Nemeroff & Applebaum P.C., Elkins Park, PA, Michael A. Klimpl, Clemons & Klimpl, Doylestown, PA, for Plaintiff.

Monica A. Schwebs, U.S. Department of Justice, Environment and Natural Resources Division, Environmental Defense Section, Washington, DC, for Defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This environmental action is before the Court today on the motions of Defendants, which seek the dismissal of four of the five counts contained in Plaintiff's complaint. Defendants argue that this Court lacks subject matter jurisdiction over the counts at issue, and therefore request an order dismissing them pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). For the reasons that follow, Defendants' motions to dismiss will be granted.

## I. BACKGROUND

The plaintiff in this case is the Warminster Township Municipal Authority ("Warminster"), a Pennsylvania municipality that has brought this action against the United States of America, the United States Department of the Navy, and the Secretary of the Navy in his official capacity (collectively, "the Government"). In its complaint, Warminster contends that one of its water wells ("Well 26") became contaminated as a result of the release of hazardous substances from the Naval Air Warfare Center ("NAWC") in Warminster, a facility that was placed on the Environmental Protection Agency's National Priorities List ("NPL") on October 4, 1989. Specifically, Warminster asserts that hazardous substances continue to migrate through the soil from NAWC's waste disposal sites, resulting in the contamination of Well 26. Warminster first discovered the presence of hazardous substances in Well 26 in 1979. From 1979 until 1985, Warminster shut down Well 26, and was forced to purchase water from other sources. In 1985, Warminster installed a groundwater treatment system to remove the hazardous substances so that it could again draw on Well 26, and asserts that it will continue to operate the groundwater treatment system until the contamination has been eliminated.

In Counts I and II, Warminster seeks compensation for response costs pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601, et seq. ("CERCLA") and the Pennsylvania Hazardous Sites Cleanup Act, 35 P.S. § 6020.101, et seq. ("HSCA"), respectively. Such costs include the cost of replacing lost well capacity, the cost of pumping well water to waste, the cost of installing and maintaining a treatment system, and the costs associated with monitoring the threat posed by the potential release of hazardous substances, among others. In Counts III, IV and V, Warminster seeks relief pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq. ("FTCA") under the theories of negligence, nuisance and strict liability.

The Government has since filed the instant motions, in which it seeks the dismissal of Counts II, III, IV and V of the complaint.

In the first motion, the Government argues that since the United States has not waived sovereign immunity for the HSCA claim, Count II must be dismissed pursuant to Rule 12(b)(1) for want of subject matter jurisdiction. Moreover, in its second motion, the Government submits that the FTCA claims must be dismissed pursuant to Rule 12(b)(6) because they are time-barred. Warminster opposes both motions. With this background and the parties' positions in mind, we turn now to address the merits of the arguments.

## II. DISCUSSION

### A. Count II: HSCA Claim

The Government contends that we lack subject matter jurisdiction over Count II, in that the United States has not waived its sovereign immunity with respect to the HSCA claim. As a sovereign, the United States " 'is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.' " *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976) (quoting *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941)). The plaintiff in a suit against the United States is therefore required to set forth in the complaint the specific statute containing a waiver of the government's immunity from suit. *Reeves v. United States,* 809 F.Supp. 92, 94 (N.D.Ga.1992), *aff'd without op.,* 996 F.2d 1232 (11th Cir.1993); *see Swift v. United States Border Patrol,* 578 F.Supp. 35, 37 (S.D.Tex.1983) ("[I]t is incumbent upon the Plaintiff to state in his complaint the grounds upon which the sovereign consented to [the] suit."), *aff'd without op.,* 731 F.2d 886 (5th Cir.1984); 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure 1212 at 126 (1990). Such waivers are effective only if they are "unequivocally expressed in the statutory text." *United States v. Idaho,* —— U.S. ——, ——, 113 S.Ct. 1893, 1896, 123 L.Ed.2d 563 (1993) (internal quotation omitted). Thus, waivers are strictly construed in favor of the sovereign, and are not to be "enlarged beyond what the language of the statute requires." *Id.; accord United States*

*v. Nordic Village, Inc.,* 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992).

■■■ In its complaint, Warminster fails to set forth the specific basis under we might entertain its HSCA claim; instead, Warminster asserts that this Court has jurisdiction over the instant action pursuant to CERCLA.[1] Compl. ¶ 4. CERCLA provides for a limited waiver of sovereign immunity, as follows:

> State laws concerning removal and remedial action, including State laws regarding enforcement, shall apply to removal and remedial action at facilities owned or operated by a department, agency, or instrumentality of the United States *when such facilities are not included on the National Priorities List.* The preceding sentence shall not apply to the extent a State law would apply any standard or requirement to such facilities which is more stringent than the standards and requirements applicable to such facilities which are not owned or operated by any such department, agency, or instrumentality.

42 U.S.C. § 9620(a)(4) (emphasis added). Thus, Congress opted to expose the United States to liability under state laws regarding removal and remedial action only where the site at issue is not included on the NPL. Since Warminster concedes in its complaint that NAWC is on the NPL, the waiver of sovereign immunity described in CERCLA cannot operate to expose the Government to liability under the HSCA. Accordingly, since the United States has not waived its immunity from suit, we must conclude that we lack subject matter jurisdiction over Warminster's HSCA claim. As a result, it must be dismissed.

### B. *Counts III, IV, and V: FTCA Claims*

■■■ The Government contends that Counts III, IV and V should be dismissed pursuant to Rule 12(b)(6). A Rule 12(b)(6) motion is the proper means by which a de-

fendant challenges the legal sufficiency of a complaint. *Jones v. Hinton,* 847 F.Supp. 41, 42 (E.D.Pa.1994). To survive a motion to dismiss, the plaintiff must set forth facts which state a claim as a matter of law. *Taha v. INS,* 828 F.Supp. 362, 364 (E.D.Pa.1993). The Court must accept as true all of the factual averments in the complaint and extend to the plaintiff the benefit of every favorable inference that can be drawn from those allegations. *Schrob v. Catterson,* 948 F.2d 1402, 1405 (3d Cir.1991); *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990). Thus, a complaint is properly dismissed only if it appears certain that the plaintiff cannot prove any set of facts in support of its claim which would entitle it to relief. *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988). In a case such as this one, where the motion to dismiss is premised upon a statute of limitations defense, we must determine whether the time alleged in the complaint shows that the claim has not been brought within the limitations period. *Davis v. Grusemeyer,* 996 F.2d 617, 623 (3d Cir.1993).

■■■ A party bringing a tort suit against the United States must first present an administrative claim to the appropriate federal agency within two years after the claim accrues. *See* 28 U.S.C. § 2401(b) ("A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues. . . ."). Thus, the FTCA's limitations provision represents a limited waiver of the sovereign immunity of the United States. As such, it is to be "carefully construed . . . so as not to extend the limited waiver of sovereign immunity beyond that which Congress intended." *Zeleznik v. United States,* 770 F.2d 20, 22 (3d Cir.1985), *cert. denied,* 475 U.S. 1108, 106 S.Ct. 1513, 89 L.Ed.2d 913 (1986); *see United States v. Kubrick,* 444 U.S. 111, 117–18, 100 S.Ct. 352, 356–57, 62 L.Ed.2d 259 (1979)

---

1. In its opposition to the Government's motion to dismiss, Warminster contends that the required waiver of sovereign immunity for the instant suit is set forth in the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6961, *et seq.* ("RCRA") and/or the Safe Drinking Water Act,

42 U.S.C. §§ 300f, *et seq.* ("SDWA"). We may not consider the RCRA and SDWA arguments, however, since Warminster failed to allege in its complaint that these statutes confer upon the Court subject matter jurisdiction over Count II.

(noting that the FTCA "waives the immunity of the United States and that in construing the statute of limitations, which is a condition of that waiver, we should not take it upon ourselves to extend the waiver beyond that which Congress intended").

 The question of when a claim accrues under the FTCA is one of federal law. *Zeleznik*, 770 F.2d at 22. In general, a tort claim accrues on the date of the last event necessary to complete the tort. *Id.; Piccolini v. Simon's Wrecking*, 686 F.Supp. 1063, 1072 (M.D.Pa.1988). If the injury is latent, however, the claim accrues on the date on which the plaintiff discovers or should have discovered the injury. *Zeleznik*, 770 F.2d at 22 (citing *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949)); *Tri–County Business Campus Joint Venture v. Clow Corp.*, 792 F.Supp. 984, 995 (E.D.Pa.1992). In the instant case, Warminster concedes that it became aware of the injury in 1979 and failed to file the appropriate administrative claim until 1994. In its effort to defeat the Government's motion, however, Warminster argues that the tort claims pleaded are not time-barred because, in its words, "Defendant's conduct constitutes continuing tortious activity resulting in ongoing injury for which a new cause of action has accrued, is presently accruing, and will continue to accrue, each day until the harm is abated or discontinued." Plaintiff's Memo. at 18.

Thus, we must decide whether Warminster has pleaded a claim for a continuing tort under Pennsylvania law. This Court set forth the appropriate test in *Tri–County Business*, a similar case in which the plaintiff filed an action seeking clean-up costs under CERCLA, HSCA and common law tort theory. In considering the applicability of the continuing trespass doctrine, we noted that while the cases considering the continuing trespass doctrine were not entirely consistent, "the crucial distinction is whether the injury is permanent and effects a permanent change in the condition of the land, or whether the action concerns separate and recurrent injuries which cannot be ascertained or estimated so as to be brought in a single action." *Id.* at 996 (citing *Piccolini*, 686 F.Supp. at 1076–77). Thus, we asked wheth-

er the injury was ascertainable or predictable and considered the question of the regularity of the incidents. *Id.* (citing *Graybill v. Providence Township*, 140 Pa.Cmwlth. 505, 593 A.2d 1314, 1316–17 (1991), *aff'd without op.*, 533 Pa. 61, 618 A.2d 392 (1993)).

Upon review of the allegations set forth in Warminster's complaint, we conclude that the injury complained of is permanent, and not continuous, in nature. Several facts lead us to this conclusion. First, we note that Warminster discovered the injury in 1979; and that in 1985 it installed a groundwater treatment system which it describes as a "permanent or long lasting removal action." Compl. ¶ 63. Moreover, the treatment system is designed to operate for forty years. Thus, the damages that Warminster allegedly incurred as a result of the contamination of Well 26 were permanently abated in 1985. Finally, we note that Warminster has set forth a detailed breakdown of the past and future damages it incurred. This leads us to conclude that the extent of the damages is ascertainable in a single action. Therefore, because Warminster failed to initiate the appropriate administrative action within two years of discovery of the harm, we hold that the FTCA claims contained in Counts III, IV and V are time-barred. Accordingly, this Court cannot properly exercise subject matter jurisdiction over them, and as a result, they must be dismissed.

## III. CONCLUSION

For the reasons stated above, the Government's motions to dismiss Counts II–V of Warminster's complaint will be granted.