**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 27 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

PLAZA SPEEDWAY INC.,

    Plaintiff - Appellee,

v.

UNITED STATES OF AMERICA;
DEPARTMENT OF THE ARMY,

    Defendants - Appellants.

No. 01-3186

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 97-CV-1346-WEB)**

---

Adam Bain, Trial Attorney, Tort Branch, Washington, D.C., United States Department of Justice, Washington, D.C. (Robert McCallum, Jr., Assistant Attorney General, Civil Division and J. Patrick Glynn, Director, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C.; James E. Flory, United States Attorney and Robin B. Moore, Assistant United States Attorney, District of Kansas, with him on the briefs), for Defendants-Appellants.

Randall K. Rathbun, Depew & Gillen, L.L.C., Wichita, Kansas, for Plaintiff-Appellee.

---

Before **LUCERO**, **PORFILIO** and **MURPHY**, Circuit Judges.

---

**PORFILIO**, Senior Circuit Judge.

Plaintiff Plaza Speedway, Inc. (Speedway), operator of a dirt racetrack adjacent to the Marshall Army Airfield at Fort Riley, Kansas, brought this Federal Tort Claims Act (FTCA) and Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) action against the United States contending the Army had contaminated Speedway's groundwater and soil. The suit was based upon activities at the airfield which the Government admitted resulted in the discharge of contaminants. The sole issue on appeal is whether the district court erred in finding Speedway timely filed its administrative claim under the FTCA's two-year statute of limitations. Concluding the district court misapplied the statute, we reverse.

The Government admits from the 1960's through 1984, the Army used a shallow 35 to 40 foot wide fire pit on the premises of the airfield to train its civilian firefighter force. Firefighters poured flammable liquids into the pit, ignited them, and extinguished the flames. Although the Speedway racetrack is located on a large parcel of open land adjacent to Marshall Airfield, it is uncontested that the fire pit was not visible from Speedway's property because a sizable berm concealed the pit from view.

When the current owners of the track, brothers Roger and Doug Thompson, acquired the property in February 1989, they knew the Army had used jet fuels and various chemicals in the course of its operations at the nearby airfield for some years. Nonetheless, at the time of the purchase, the Thompsons did not test the wells on their property or otherwise obtain an environmental assessment of the land.

Historically, water from the nearby Kansas River was used at the racetrack for personal consumption, but track patrons did not like its taste. Although the Thompsons and others nearby believed there was no health risk from drinking the water, and did so themselves, they had municipal water hauled to the premises for their customers' use. To change this system, the brothers applied for a public water permit.

On April 9, 1993, following the application, the Kansas Department of Health and Environment (KDHE) sampled well water on Speedway's property and detected the presence of solvents linked to cancer. The initial contamination report stated, "investigation needed to see if the contamination is a result of on site activities, such as the use of solvents to clean auto parts, *or if it could arise from nearby military operations at Fort Riley.*" (emphasis added). The Thompsons did not see the written report until January or February of 1995.

After the first inspection, on approximately August 23, 1993, Randolph Brown, an Environmental Geologist in the remedial section of KDHE, called the Thompsons to discuss the chemical contamination on Speedway's premises. At trial, Mr. Brown did not remember which Thompson brother he spoke to; neither brother recalled speaking with Mr. Brown. Notwithstanding, in its Memorandum and Findings of Fact and Conclusions of Law, the district court found the August 23, 1993 telephone call:

> focused on the test results and concerned the possibility that Plaza
> Speedway activities were the source of the contamination. Brown told
> Thompson that he was going to send a list of questions, and he may have
> told him that one of the [three] wells at the track had "VOCs" (volatile
> organic compounds) in it. This information was not necessarily alarming

because there are VOCs in Wichita's public drinking water. Brown did not inform Thompson that the contaminated water was unfit for human consumption or that water use should be restricted in any way. Brown did not recall telling Thompson anything that would have put him on notice that Fort Riley or some third party might have injured them. The purpose of the telephone contact was to identify "potentially responsible parties" and to question the Speedway's own activities at the track.

In the district court's view, the first formal information the Thompsons received concerning contamination was a letter from Mr. Brown dated October 18, 1993. The letter indicated hazardous substances were present in the groundwater and soil at Speedway, and Speedway was considered a potentially responsible party. The Thompsons received a second letter from KDHE, dated November 12, 1993, which requested answers to questions concerning the use and storage of motor oils, fuels, and solvents on Speedway property. Question 7 asked:

> At the time you acquired the property on which your Facility is located, did you know or have reason to know of any hazardous substances, pollutants, contaminants, or hazardous wastes disposed of, or stored or released on, or at your Facility?

In response, Doug Thompson stated, in part:

> We were aware that the United States Army had conducted numerous operations at Marshall Airfield in a close proximity to our area whereby jet fuel, solvents and various chemicals were employed in a number of exercise activities over the years.

Mr. Thompson further explained that he and his brother had been familiar with the racetrack since its construction and that there had never been any hazardous substances at the facility.

- 4 -

On October 13, 1995, Speedway filed an administrative claim with the Army, alleging the Army's fire training contaminated Speedway's property. The Army never acted upon this claim; nonetheless, the Government maintains Speedway's filing of the instant case constitutes Speedway's election to deem the Army's non-action a final disposition of the claim within the context of 28 U.S.C. § 2675(a).[1]

Speedway filed its complaint in the district court on August 15, 1997. Prior to trial, the Government moved for partial summary judgment, contending the court lacked subject matter jurisdiction because Speedway filed its administrative claim outside the FTCA's two-year statute of limitations. The district court denied the motion, finding a "serious dispute [exists] about when the plaintiff knew, or should have known, the circumstances surrounding the contamination of its property."

Following a bench trial, the district court concluded the Army's negligent operation of the fire pit was the source of Speedway's contamination. The court awarded Speedway $150,000 damages for diminished property value and granted Speedway declaratory judgment in its CERCLA claim.

The Government appealed, challenging only the district court's subject matter jurisdiction. In its view, the date upon which the statute of limitations began to run was August 23, 1993, when Mr. Brown first called the Thompsons. Therefore, Speedway's October 13, 1995 administrative claim exceeded the two-year limitation period.

---

[1] This provision, which effectively prohibits an agency from denying a claimant judicial redress due to the agency's non-action, allows the claimant to file an action if the agency has not made a final disposition of the claim within six months of filing.

"The determination of the district court's subject matter jurisdiction is a question of law which we review de novo." ***Hart v. Dep't of Labor ex rel. United States***, 116 F.3d 1338, 1339 (10th Cir. 1997) (citation omitted). "We also review de novo a district court's ruling regarding the applicability of a statute of limitations." ***Indus. Constructors Corp. v. United States Bureau of Reclamation***, 15 F.3d 963, 967 (10th Cir. 1994) (citation omitted). Failure to file an FTCA claim within the two-year statute of limitations period is a matter we review de novo. ***Hart***, 116 F.3d at 1338.

We will not, however, disturb the district court's factual findings unless they are clearly erroneous. ***Manning v. United States***, 146 F.3d 808, 812 (10th Cir. 1998) (citation omitted). "A finding of fact is 'clearly erroneous' if it is without factual support in the record or if . . . , after reviewing all the evidence, [we are] left with a definite and firm conviction that a mistake has been made." ***Id.*** (citation omitted). "[W]e view the evidence in the light most favorable to the district court's ruling and must uphold any district court finding that is permissible in light of the evidence." ***Id.*** at 813. (citation omitted).

Through the FTCA, the United States waives its sovereign immunity from tort claims, making itself liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. However, "[a] tort claim against the United States shall be forever barred unless it is presented to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). "The purpose behind 28 U.S.C. § 2401(b)–the limitations provision of the FTCA–is to require the

- 6 -

reasonably diligent presentation of tort claims against the government." *Arvayo v. United States*, 766 F.2d 1416, 1418 (10th Cir. 1985) (*citing* **United States v. Kubrick**, 444 U.S. 111 (1979)). Furthermore:

> Section 2401(b), like statutes of limitations generally, represents a legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time, and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.

*Id*. at 1418-19 (citations omitted).

Both § 2401(b) and its legislative history are "silent as to the meaning of 'accrues.'" *Id.* at 1419. Federal law controls the issue of when a federal cause of action accrues, but "because the statute waives the sovereign immunity of the United States, courts should be mindful to construe it in a manner which neither extends nor narrows the waiver Congress intended." *Id*.

In **United States v. Kubrick**, 444 U.S. 111, 120 (1979), the United States Supreme Court stated, "the general rule under the Act has been that a tort claim accrues at the time of the plaintiff's injury." However, the Court found an exception in medical malpractice and latent injury cases, adopting therein the "discovery rule." The discovery rule, which holds a claim does not accrue until the injured party knows of both the existence and cause of the injury, is followed to "protect plaintiffs who are blamelessly unaware of their claim because the injury has not yet manifested itself or because the facts establishing a causal link between the injury and the medical malpractice are in the control of the tortfeasor or otherwise not evident." *Diaz v. United States*, 165 F.3d 1337, 1339 (11th

Cir. 1999). This court also applies the discovery rule to medical malpractice claims, *see e.g., **Bradley v. United States***, 951 F.2d 268, 270 (10th Cir. 1991), and to intentional concealment cases, *see e.g., **Ballen v. Prudential Bache Sec. Inc***., 23 F.3d 335, 336-37 (10th Cir. 1994).

While federal courts "generally apply a discovery accrual rule when a statute is silent on the issue," ***Rotella v. Wood***, 528 U.S. 549, 555 (1980), the Supreme Court explicitly has "not adopted that position as [its] own." ***TRW Inc. v. Andrews***, _ U.S. _ , 122 S.Ct. 441, 447 (2001). The ***TRW*** Court rejected the Ninth Circuit's view that unless Congress expressly states otherwise, the discovery rule is read into every federal statute of limitations. ***Id.***

The Supreme Court has yet to say explicitly whether the discovery rule should be extended to FTCA cases other than medical malpractice. In its published cases, neither has this court. In ***Kynaston v. United States***, 717 F.2d 506, 508 (10th Cir. 1983) involving the liability of the United States under the Swine Flu Act, we said, "[u]nder the FTCA a cause of action accrues at the time the plaintiff is injured, or, in a medical malpractice action, when the plaintiff has discovered both his injury and its cause." Conversely, in ***Industrial Constructors***, a FTCA/*Bivens* case for constitutional violations and breach of contract, we declared, "[t]he statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." 15 F.3d. at 969.

Although **Kynaston** and **Industrial Constructors** appear to apply inconsistent accrual theories, a closer reading indicates they do not. In **Industrial Constructors**, we affirmed the district court's dismissal of the FTCA claim because plaintiffs' administrative claim was incomplete and filed more than 6 months after the agency's denial. *Id.* at 968. We applied the discovery rule not to the FTCA action but rather to the *Bivens* claim. *Id.* at 968-69. Therefore, with respect to application of the FTCA statute of limitations, our recent decisions are in harmony.

In this circuit, the general statute of limitations accrual rule in non-medical malpractice FTCA cases remains the injury occurrence, and not the discovery rule. Nonetheless, we must consider whether the "general" rule is absolute.

In an unpublished Order and Judgment, a panel of this court applied the discovery rule in an appeal involving damages arising out of a motor vehicle collision and conspiracy. *See* **Levy v. Swift Transp. Co., Inc.**, 194 F.3d 1320 (10th Cir. 1999). Moreover, other circuits have applied the discovery rule in cases not involving medical malpractice or latent injury. *See e.g.,* **Slaaten v. United States**, 990 F.2d 1038, 1041 (8th Cir. 1993) (unpublished); **Gibson v. United States**, 781 F.2d 1334, 1344 (9th Cir. 1986). However, **Slaaten** was somewhat modified in **K.E.S. v. United States**, 38 F.3d 1027, 1030 n.2 (8th Cir. 1994), in which the Eighth Circuit Court of Appeals stated the discovery rule applies "only in exceptional cases [in which] a reasonably diligent plaintiff cannot immediately know of the fact of injury and its cause." By comparison, the Supreme Court and federal appellate courts regularly apply the discovery rule in suits

brought under federal statutes other than the FTCA. *See e.g.*, ***Rotella***, 528 U.S. at 1080-82 (RICO); ***Matson v. Burlington N. Santa Fe R.R.***, 240 F.3d 1233, 1235 (10th Cir. 2001) (FELA).

In this case, we believe the district court applied the discovery rule without consideration of all the facts in evidence. The proper approach first requires a determination of whether those facts dictate the application of the general occurrence rule, or whether, as in ***K.E.S.***, this is an exceptional case in which the plaintiffs could not have immediately known of the injury. If we determine the latter scenario applies, we then decide when Speedway discovered its injury.

Addressing the first question, we believe this is an exceptional case warranting application of the discovery rule. Without doubt the Government had been releasing toxic substances into the fire pit long before the Thompsons acquired the racetrack property. Accordingly, injury occurred when they took title to the polluted land. But equally clear is that although both Thompson brothers knew the Army was doing something on its property with some substances, neither knew of the toxic effect of the conduct. Nor would it have been easy to discover what substances had been burned in the fire pit because the berm screened Speedway's view. Thus, contrary to Congressional intent, strict application of the occurrence rule here would deny injured parties their right to compensation under the FTCA.

The second question - when Speedway discovered the Army may have polluted its property - must be answered in light of the purpose of the statute of limitations and the

court's corresponding duty. We must consider what is fair to the Plaintiff but also decide "in a manner which neither extends nor narrows the waiver Congress intended." *Arvayo*, 766 F.2d at 1419.

The Government avers the Thompsons had sufficient information in August 1993 to start the statute of limitations. Considering the racetrack's "otherwise isolated location, just adjacent to the Marshall Army Airfield" and the Thompsons' actual knowledge of the Army's use of chemicals at the airfield, the Government urges "a reasonable person in the Speedway's position would have begun an inquiry into whether it had a cause of action against the government for contamination."

Relying on *Arvayo*, the Government contends Speedway had a duty to inquire into the cause of its injury. However, *Arvayo*, a medical malpractice case, does not support the Government's argument that there is a "duty to discover" for purposes of the statute of limitations in every FTCA case. Moreover, the facts in *Arvayo* are distinguishable. The Arvayo's son suffered brain damage after two strikingly different diagnoses of his condition. Both diagnoses were made within a twenty-four hour period in 1979. The Arvayos did not discover a possible causal connection between the delay in diagnosing meningitis and their son's brain damage until after August 1981. This court reversed the district court's holding in favor of the Arvayos, reasoning two diagnoses within twenty-four hours, concomitant with the likelihood of brain damage, would lead reasonable parents in the Arvayos' position to make some type of inquiry. *Id*. at 1422. We held the Arvayo's administrative claim, filed after they fortuitously learned from their attorney of

a causal connection between the delay in diagnosis and brain damage, was untimely because it was brought outside the FTCA's two-year statute of limitations. *Id*. Dissenting, Judge McKay stated the issue as "whether the district court's finding that plaintiff's medical malpractice claim was timely filed is clearly erroneous." *Id*. at 1423 (McKay, J., dissenting). Citing *Maughan v. SW Servicing*, *Inc.*, 758 F.2d 1381, 1387-88 (10th Cir. 1985), notably *not* a FTCA case, Judge McKay asserted "when a plaintiff knew or with reasonable diligence should have known a cause of action is a question for the finder of fact." *Id*. at 1425.

The United States directs our attention to authority stressing the FTCA's statute of limitations is a "meritorious defense, in itself serving a public interest." *Kubrick*, 444 U.S. at 117 (*citing Guaranty Trust Co. v. United States*, 304 U.S. 126, 136 (1938). Further, the Government points to *Robbins v. United States*, 624 F.2d 971, 973 (10th Cir. 1980), for our statement that "a legally cognizable injury or damage begins the running of [the FTCA's statute of limitations] even though the ultimate damage is unknown or unpredictable;" and *Gustavson v. United States*, 655 F.2d 1034, 1036 (10th Cir. 1981), where we opined, "[l]ack of knowledge of the injury's permanence, extent, and ramifications does not toll the statute."

The United States also argues that the district court erred by failing to find that knowledge of contamination equals knowledge of an injury, relying on *Muth v. United States*, 1 F.3d 246, 249-50 (4th Cir. 1993), and *Warminster Tp. Mun. Auth. v. United States*, 903 F. Supp. 847, 851 (E.D. Pa. 1995). The Government argues that the Fourth

Circuit Court of Appeals in *Muth* found plaintiff's cause of action accrued when he became aware that surrounding properties were contaminated, even though no contamination had been detected on his property. Further, the United States asserts that in *Warminster*, the District Court for the Eastern District of Pennsylvania held that knowledge of contamination was sufficient for plaintiff's cause of action to accrue.

In response, relying on Judge McKay's dissent in *Arvayo*, Speedway asserts "[t]he issue of when a plaintiff knew or with reasonable diligence should have known of a cause of action is a question for the finder of fact." 766 F.2d at 1425 (McKay, J., dissenting). Speedway views the United States' argument as two-fold: (1) Speedway was notified prior to October 13, 1993 it had VOCs in its water; and (2) it knew in 1985 the Army used "jet fuel, solvents and various chemicals" at Marshall Airfield. Speedway contends that because Wichita's public drinking water contained VOCs, the presence of these solvents did not inform Speedway of the injury. Further, it argues that even if Mr. Brown's August 1993 phone call provided notice of the injury, nothing informed Speedway of its cause. In sum, Speedway maintains its degree of knowledge was insufficient to trigger the running of the statute of limitations.

The Government's reliance on *Muth* and *Warminster* is misplaced. In *Muth*, the Fourth Circuit held plaintiff's claim untimely because plaintiff corresponded with the Army, the EPA, and various elected representatives more than two years before filing an administrative claim. 1 F.3d at 248. Moreover, that correspondence established plaintiff was unequivocally aware his property was formerly used for TNT production,

- 13 -

contaminants had been discovered adjacent to his property, and, as a result, "his property had been rendered worthless." *Id*. In *Warminster*, the plaintiff *conceded* it became aware of the injury in 1979 and failed to file the appropriate administrative claim until 1994. 903 F. Supp. at 851. Similarly, Speedway unduly relies on the *Arvayo* dissent; while compassionate and thoughtful, Judge McKay's opinion lacks precedential value.

The district court based its statute of limitations holding on the testimony of Mr. Brown, the Environmental Geologist with KDHE, concerning his August 23, 1993 telephone call to the Thompsons. On cross-examination, Mr. Thompson affirmed "our conversation focused entirely on hey, I'm going to get you guys a potentially responsible party request letter." Mr. Brown only could recall that in the phone conversation, he told one of the Thompsons that he would send them a list of questions about facility operations and potential use of hazardous substances on their property; and summarized the test results, saying something like "you have VOCs in your water." Based on Mr. Brown's testimony, the district court held the August 23, 1993 telephone call was not sufficient to start the statute of limitations, "because the call did not alert the Speedway that it had actually sustained an injury," and "the only 'cause' mentioned in this phone call related to the possibility that the Speedway *itself* was responsible for the pollution because of its operations at the track."

Underlying the question of law in this appeal – subject matter jurisdiction – is a question of fact, namely *when* the Thompsons knew or should have known of the contamination. "The determination of the district court's subject matter jurisdiction is a

question of law which we review de novo," ***Hart***, 116 F.3d at 1339 (citation omitted), but we must also give "due regard to the district court's opportunity to judge the credibility of witnesses," ***id.*** (citing Fed. R. Civ. P. 52(a)), and be mindful that "the resolution of factual issues and conflicting evidence [is] solely within the province of the district court." ***Cowles v. Dow Keith Oil & Gas***, ***Inc.***, 752 F.2d 508, 511 (10th Cir. 1985).  As the Supreme Court noted in ***Anderson v. City of Bessemer City***, ***N.C.***, 470 U.S. 564, 573-74 (1985):

> [i]n applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues *de novo*. If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.  Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. (citations omitted).

Applying the above standards, significant facts in evidence that the district court did not consider require reversal of its judgment.  First, although the Thompsons did not see the KDHE report concerning the contamination of their property until 1995, they knew testing took place in 1993.  Second, Mr. Thompson's answer to Question 7 indicates he and his brother knew the Army used jet fuel, solvents, and various chemicals.  Third, evidence shows the racetrack did not have any neighbors other than Fort Riley.  Combined, these facts establish that through the August 23, 1993 telephone call, Speedway knew or had reason to know when its property was acquired toxic substances were present at the adjoining premises.  Thus, when the Thompsons were notified on

- 15 -

August 23, 1993 of the presence of contaminants in their well, they had reason to suspect the source might have been the neighboring property.  The two years thereafter was adequate time for them to initiate inquiry into any possible harm.  Because the district court failed to take these facts into consideration, we believe its findings were clearly erroneous.

The judgment of the district court is **REVERSED** and **REMANDED WITH INSTRUCTIONS** to dismiss the complaint for lack of subject matter jurisdiction.

No. 01-3186, <u>Plaza Speedway, Inc. v. United States</u>

**LUCERO,** Circuit Judge, dissenting.

I am in full agreement with the majority's scholarly opinion, save one issue. I disagree with the conclusion that the district court clearly erred in finding Speedway did not know of the contamination caused by the Army based on the August 23, 1993, phone call from KDHE. Fealty to the deferential clear error standard of review compels affirmance, and I respectfully dissent from the panel's opposite determination.

As the majority acknowledges, the question of when a claim accrues under the FTCA for purposes of starting the two-year statute of limitations— in this case, when a person discovers his or her injury <u>and</u> its cause—is a factual determination. Although it may have been reasonable for the district court to find that the August 23rd communication combined with other evidence <u>did</u> give Speedway sufficient notice of its injury and cause, it was equally reasonable for the court to find otherwise. <u>See Anderson v. City of Bessemer City</u>, 470 U.S. 564, 573–74 (1985) ("If the district court's account of the evidence is <u>plausible</u> in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." (emphasis added)). Speedway had no direct knowledge of the specific activities taking place at the nearby Army facility, no knowledge of the toxicity of the chemicals found on its property, and did not receive the

"Potentially Responsible Parties" letter until October 18, 1993. The district court found that the August 23rd conversation "focused on the test results and concerned the possibility that Plaza Speedway activities were the source of the contamination" and that "Brown did not recall telling Thompson anything that would have put him on notice that Fort Riley or some third party might have injured them." Plaza Speedway, Inc. v. United States, No. 97-1346 (D. Kan. filed April 12, 2001).

Even under de novo review, I would be inclined to adopt the district court's resolution of the matter. Certainly, viewing the evidence in the light most favorable to the district court's ruling, as I must under a deferential standard, I cannot say that the district court's factual finding regarding when Speedway's tort claim accrued is "implausible."