FILED

**U.S. Bankruptcy Appellate Panel
of the Tenth Circuit**

**December 28, 2017**

**Blaine F. Bates
Clerk**

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

| | |
|---|---|
| IN RE JOHN Q. HAMMONS FALL 2006, LLC, et al., | BAP No. KS-16-037 |
| Debtors. | |
| | |
| JD HOLDINGS, L.L.C., | Bankr. No. 16-21142<br>Chapter 11 |
| Appellant, | |
| v. | OPINION[*] |
| JOHN Q. HAMMONS FALL 2006, LLC, et al., | |
| Appellee. | |

Appeal from the United States Bankruptcy Court
for the District of Kansas

Before **MICHAEL**, **ROMERO**, and **HALL**, Bankruptcy Judges.

**MICHAEL**, Bankruptcy Judge.

By and large, appellate review is a simple and straightforward process. A

trial court makes its findings of fact and conclusions of law, and enters a

judgment in accordance with those findings and conclusions. If there is a timely

---

[*]     This unpublished opinion may be cited for its persuasive value, but is not
precedential, except under the doctrines of law of the case, claim preclusion, and
issue preclusion. 10th Cir. BAP L.R. 8026-6.

appeal, an appellate court reviews those findings and conclusions using well established standards to determine whether an error has been made. Right or wrong, affirmed or reversed, the appellate process has one constant: the appeals court is reviewing an actual decision of the lower court. This appeal marks the first time in over seventeen years on the bankruptcy appellate panel that this judge has been asked to decide an issue pending—but not decided by the trial judge—when this appeal was taken; namely, whether the Chapter 11 cases that spawned this appeal should be dismissed. For the reasons set forth herein, we limit our review to the matter actually decided by the bankruptcy court. With respect to that issue, whether rejection of an executory contract was within the realm of the debtors' proper business judgment, there is no contest, and we find no error.

## I. FACTUAL AND PROCEDURAL HISTORY

Appellees consist of the Revocable Trust of John Q. Hammons, dated December 28, 1989 (the "Trust") and seventy-one of its directly or indirectly wholly owned subsidiaries or affiliates (the "Affiliates") (collectively referred to as the "Debtors"). In the 1950s, John Q. Hammons ("Hammons") began developing hotels and continued to do business as a hotelier until his death. As part of this endeavor, Hammons formed the Trust and other subsidiaries.

In 2005, the Trust agreed to sell its majority interest in a wholly owned subsidiary, which held a portfolio of forty-three hotels, to JD Holdings L.L.C.

2

("JD Holdings") and related parties. As part of that transaction, the Trust and certain Affiliates executed a right of first refusal (the "ROFR") on the sale of certain other hotels (the "JQH Subject Hotels") in favor of JD Holdings.[1] The ROFR provided, in relevant part, that upon Hammons's death, the JQH Subject Hotels would be sold within two years or upon other certain conditions.[2] The ROFR also provided that in the event of a material breach by the Trust or Affiliates, JD Holdings had the right to purchase any JQH Subject Hotels at eighty percent of the price otherwise required to be paid under the sale agreement.[3]

In May 2012, JD Holdings commenced an action against the Trust and the Affiliates (the "Delaware Litigation") in the Chancery Court of Delaware (the "Delaware Court"), alleging the Affiliates breached their obligations under the ROFR. In May 2013, while the Delaware Litigation was pending, Hammons died. In the Delaware Litigation, JD Holdings filed a motion for status quo order, requesting the entry of an order precluding the Affiliates from engaging in any

---

[1]     *Sponsor Entity Right of First Refusal Agreement*, *in* Appellant's App. at 537.

[2]     *Id.* at 7, *in* Appellant's App. at 544.

[3]     *Id.* at 10-11, *in* Appellant's App. at 547-48. In 2008, the parties amended the ROFR to state that the Affiliates would provide JD Holdings with 22.5% subordinated seller financing with respect to any JQH Subject Hotel that was actually acquired by JD Holdings pursuant to the ROFR. *Agreement and Amendment, Schedule 2*, *in* Appellant's App. at 689.

3

conduct related to the JQH Subject Hotels outside of the ordinary course of business.[4] On October 28, 2015, the Delaware Court granted that request.[5]

On June 26, 2016 and July 5, 2016, the Debtors filed for Chapter 11 protection. Almost a month later, on July 25, 2016, JD Holdings filed its motion to dismiss, abstain, or lift the automatic stay to allow JD Holdings to renew the Delaware Litigation (the "Dismissal Motion").[6] JD Holdings argued three separate bases for dismissal of the bankruptcy cases: (1) the Affiliates' cases must be dismissed because the Affiliates lacked proper authorization to file for bankruptcy following the status quo order in the Delaware Litigation; (2) the Trust's case must be dismissed because the Trust was not eligible to be a debtor; and (3) all of the bankruptcy cases should be dismissed because they served no valid bankruptcy purpose and were filed in bad faith as a means to obtain a tactical litigation advantage in the Delaware Litigation. In the Dismissal Motion, JD Holdings did not explicitly argue the bankruptcy court lacked subject matter jurisdiction to hear the cases.

On August 16, 2016, the Debtors filed their *Motion for Entry of an Order*

---

[4]     *Plaintiff JD Holdings, L.L.C.'s Motion for Status Quo Order*, *in* Appellant's App. at 465.

[5]     *Status Quo Order*, *in* Appellant's App. at 477.

[6]     *JD Holdings' Motion to Dismiss Debtors' Chapter 11 Petitions, Abstain from these Chapter 11 Cases, or Alternatively to Lift or Modify the Automatic Stay and Memorandum of Law in Support Thereof*, *in* Appellant's App. at 211.

*Authorizing Rejection of Sponsor Entity Right of First Refusal Agreement, Dated*

*September 16, 2005 and Agreement and Amendment, Dated December 10, 2008*

(the "Rejection Motion"),[7] arguing the ROFR was an executory contract to which

the business judgment test applied, and, in the Debtors' business judgment,

retroactive rejection of the ROFR benefitted the estate.[8] On September 19, 2016,

JD Holdings filed its objection to the Rejection Motion, arguing, in part, the

Rejection Motion was premature because JD Holdings sought dismissal "on

multiple grounds, some of which [were] jurisdictional, and all of which . . .

present[ed] gateway issues that challenge[d] the existence of Debtors' bankruptcy

cases."[9] The parties also submitted prehearing briefs. In its brief, JD Holdings

noted it did not "intend to challenge the Debtors' exercise of their business

---

[7]     Rejection Motion, *in* Appellant's App. at 706.

[8]     The business judgment test applies to authorize rejection of an executory contract under 11 U.S.C. § 365. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984). Courts routinely approve motions to reject executory contracts upon a showing that the debtor's decision to reject the contract is an exercise of sound business judgment. 3 Collier on Bankruptcy ¶ 365.03 (16th ed. 2016); *In re Spoverlook*, LLC, 560 B.R. 358, 361 (Bankr. D.N.M. 2016) (stating that under the business judgment test "[d]eference is given to the debtor's decision, provided it demonstrates" that rejecting the contract is advantageous).

[9]     *JD Holdings' Objection to Debtors' Motion for Entry of an Order Authorizing Rejection of Sponsor Entity Right of First Refusal Agreement, Dated September 16, 2005, and Agreement and Amendment, Dated December 10, 2008* at 4, *in* Appellant's App. at 1042.

judgment as a basis for opposing rejection of the ROFR"[10] and limited its argument to whether the bankruptcy court could, or should, resolve the eligibility issues before ruling on the Rejection Motion.[11] On August 22, 2016, the bankruptcy court held a hearing to address various uncontested motions and the Dismissal Motion. At this hearing, JD Holdings argued "there needs to be a decision about whether or not these Debtors' [sic] are properly here [in bankruptcy][ ] before the Court can address the rejection motion."[12]

On December 9, 2016, the bankruptcy court conducted a hearing on the Rejection Motion (the "Rejection Motion Hearing"). In oral findings made on the record at the conclusion of the Rejection Motion Hearing, the bankruptcy court acknowledged JD Holdings' express concession of any challenge to the exercise of the Debtors' business judgment.[13] The bankruptcy court concluded that a debtor's eligibility to seek bankruptcy relief is not jurisdictional.[14] The

---

[10]     *JD Holdings' Pre-hearing Brief in Opposition to Debtors' Motion for Entry of an Order Authorizing Rejection of Sponsor Entity Right of First Refusal Agreement, Dated September 16, 2005, and Agreement and Amendment, Dated December 10, 2008* at 1-2, *in* Appellant's App. at 1174-75. JD Holdings noted it longer believed an evidentiary hearing was necessary.

[11]     *Id*. at 8, *in* Appellant's App. at 1181.

[12]     *Aug. 22 Hearing Tr.* at 32, *in* Appellant's App. at 1065.

[13]     *Rejection Order Hearing Tr.* at 62-63, *in* Appellant's App. at 1703-04.

[14]     *Order Granting Motion to Reject Right of First Refusal Agreement Pursuant to 11 U.S.C. § 365* at 2 n.1, *in* Appellant's App. at 1637.

6

bankruptcy court further determined the Debtors had exercised proper business judgment in their decision to reject the ROFR. On December 13, 2016, the bankruptcy court entered its *Order Granting Motion to Reject Right of First Refusal Agreement Pursuant to 11 U.S.C. § 365* (the "Rejection Order"),[15] granting the Rejection Motion and approving the rejection of the ROFR pursuant to § 365(a) as to each Debtor and as to each asset subject to the ROFR.[16] JD Holdings filed a timely notice of appeal.

## II. STANDARD OF REVIEW

A determination of a trial court's subject matter jurisdiction is a question of law, reviewed *de novo*.[17] We review a bankruptcy court's underlying factual findings for clear error.[18] Issues relating to a trial court's supervision of litigation are most commonly reviewed under an abuse of discretion standard.[19] Under the abuse of discretion standard, a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a

---

[15]     *Id.* at 1, *in* Appellant's App. at 1636.

[16]     *Id.* at 3, *in* Appellant's App. at 1638.

[17]     *Plaza Speedway Inc. v. United States*, 311 F.3d 1262, 1266 (10th Cir. 2002).

[18]     *Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1310 (10th Cir. 2008) (citing *Ahammed v. Sec. Inv'r Prot. Corp. (In re Primeline Sec. Corp.)*, 295 F.3d 1100, 1105 (10th Cir. 2002)).

[19]     *In re Westby*, 486 B.R. 509, 517 (10th Cir. BAP 2013) (citing *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164 (10th Cir. 1998)).

clear error of judgment or exceeded the bounds of permissible choice in the circumstances.[20]

## III. DISCUSSION

A substantial portion of JD Holdings' brief focuses on the factual issues of whether the Trust was either eligible to be a debtor or authorized to file bankruptcy on behalf of the Affiliates. The issue of whether the bankruptcy cases should be dismissed is not before this Court.[21] We are tasked with reviewing the Rejection Order. Because the bankruptcy court did not rule on these issues in the Rejection Order, they are not properly before this Court and will not be addressed.[22] In any event, we are not in a position to review any issue pertaining to eligibility. The record before us does not relate to the Dismissal Motion. We have no authority to or interest in trying the Dismissal Motion *de novo*.

---

[20]     *Id*. at 515 (citing *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994)).

[21]     We are aware that, on October 13, 2017, the bankruptcy court entered its Memorandum Opinion and Order denying the Dismissal Motion. JD Holdings has also appealed that Order to this Court. *See* BAP No. 17-043. That appeal remains in the briefing stages as of the date of this Opinion, and will be decided by the Bankruptcy Appellate Panel of the Tenth Circuit in the ordinary course of business.

[22]     *Tele-Commc'ns, Inc. v. Comm'r of Internal Revenue*, 104 F.3d 1229, 1233 (10th Cir. 1997) (quoting *Lyons v. Jefferson Bank & Tr.*, 994 F.2d 716, 721 (10th Cir. 1993) ("an issue must be 'presented to, considered [and] decided by the trial court' before it can be raised on appeal.")).

**A.** **The bankruptcy court did not err in determining it had jurisdiction to resolve the Rejection Motion without deciding whether the Trust is eligible to be debtor within the meaning of 11 U.S.C. § 109(a).**[22]

JD Holdings argues the bankruptcy court did not have the authority to enter the Rejection Order because the Trust is not a business trust, within the meaning of § 101(9)(A)(v), eligible to file bankruptcy under § 109(a).[23] JD Holdings argues the Trust "had to prove that it was a 'business trust'"[24] before it could reject the ROFR because eligibility for relief under the Bankruptcy Code is "an essential element of its 'claim' for rejection pursuant to Section 365."[25] JD Holdings contends this is not an argument that the bankruptcy court abused its discretion in managing its docket or should have first resolved the Dismissal Motion.[26] While the semantics are interesting, they are not persuasive. JD

---

[22]    All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated.

[23]    Appellant's Br. 19. Section 101(13) defines debtor as a "person or municipality concerning which a case under this title has been commenced." Section 101(41) states the term person "includes individual, partnership, [and] corporation, . . . ." Section 101(9)(A)(v) defines corporation to include a business trust. The Bankruptcy Code does not define business trust.

[24]    Appellant's Br. 20; *see also* Appellant's Br. 19. ("Section 365 does not apply to a contract to which no debtor is a party.").

[25]    Appellant's Br. 21.

[26]    Appellant's Reply Br. 7 ("[T]his issue does not relate merely to the Bankruptcy Court's 'docket management decisions' or the order in which the Bankruptcy Court resolved certain motions before it but rather . . . [whether] the Bankruptcy Court was [] required to first resolve Appellee's eligibility to obtain [] relief.").

9

Holdings contends the bankruptcy court was required to rule that the Debtors were eligible to be Chapter 11 debtors before considering and ultimately granting the Rejection Motion. We do not find this argument persuasive.

The bankruptcy court determined "a debtor's eligibility to seek bankruptcy relief is not jurisdictional,"[27] relying on the Tenth Circuit's decision in *In re Hamilton Creek Metropolitan District*.[28] In *Hamilton Creek*, a metropolitan district filed a Chapter 9 bankruptcy petition. One creditor objected, arguing the debtor was not eligible to file because it had paid its debts as they became due and thus was not insolvent. The bankruptcy court dismissed the case, finding that the metropolitan district was not insolvent, and the district court affirmed. The Tenth Circuit also affirmed, holding that to be eligible for Chapter 9 relief an entity must be insolvent and that the bankruptcy court did not err in finding the metropolitan district was not insolvent. In disposing of the case, the Tenth Circuit highlighted that it was not assuming jurisdiction for the purpose of deciding the merits following a jurisdictional objection in contravention of *Steel Co. v. Citizens for a Better Environment*.[29] The Tenth Circuit noted the issue of eligibility was not jurisdictional as § 109(c) uses "terms of eligibility rather than

---

[27]     Rejection Order at 2 n.1, *in* Appellant's App. at 1637. The bankruptcy court also relied on 2 Collier on Bankruptcy ¶109.01[2] (1998).

[28]     143 F.3d 1381 (10th Cir. 1998)).

[29]     523 U.S. 83 (1998) (rejecting the approach of assuming jurisdiction and proceeding to the merits, despite jurisdictional objections).

jurisdiction"[30] and "none of the § 109(c) criteria is jurisdictional in nature."[31]

We are bound by the Tenth Circuit's ruling in *Hamilton Creek*.[32] Although *Hamilton Creek* specifically focused on subsection (c) of § 109, and JD Holdings' argument is predicated on subsection (a), *Hamilton Creek* is nonetheless dispositive. In determining bankruptcy court jurisdiction, there is no reasonable basis to differentiate eligibility of a trust to be a debtor under Chapter 11 from the eligibility of a municipality to be a debtor under Chapter 9. We conclude the bankruptcy court had jurisdiction to resolve the Rejection Motion while the argument that the Trust was not a debtor within the meaning of § 109(a) remained pending.

A Chapter 11 case is fluid. In most cases, there is an operating business that must buy materials, generate services or product, pay employees, and so on. Under the operative provisions of the Bankruptcy Code, many of these ongoing tasks require the debtor to seek and obtain permission and an order from the bankruptcy court. No creditor can be allowed to hold the process hostage by the mere allegation that a debtor does not belong in bankruptcy court. Were we to so hold, the concepts of providing debtors with breathing room or a fresh start would

---

[30]     *Hamilton Creek*, 143 F.3d at 1385 n.2.

[31]     *Id.*

[32]     *Davis v. Chapman (In re Chapman)*, No. 02-025, 2002 WL 1926137, at 2 (10th Cir. BAP Aug. 21, 2002) ("This court, of course, is bound to follow the Tenth Circuit's decisions, and is without authority to overrule them.").

11

be thwarted. A single creditor would have the ability to derail a Chapter 11 reorganization, or, at a minimum, hold the process hostage to its demands. We are confident this is not the result Congress intended when it enacted the Bankruptcy Code.

**B.    The bankruptcy court did not err in determining it had jurisdiction to consider the Rejection Motion without deciding whether the Affiliates had authority under state law to file bankruptcy.**

JD Holdings argues the Trust lacked the authority to file bankruptcy for the Affiliates under state law.[33] JD Holdings further contends a bankruptcy court does not have subject matter jurisdiction over a case filed on behalf of an entity without authority. In granting the Rejection Motion, the bankruptcy court did not explicitly address whether the Affiliates were authorized to file bankruptcy. The bankruptcy court, however, noted generally "[i]f the Court felt it did not have subject matter jurisdiction, it would not proceed[.]"[34]

JD Holdings relies on the Supreme Court's opinion in *Price v. Gurney*.[35] JD Holdings argues *Price* provides an independent basis for dismissal based on lack of jurisdiction when an entity's bankruptcy is filed without proper authority. In *Price*, a corporation sought bankruptcy relief under Chapter X of the pre-Code

---

[33]    JD Holdings presents argument as to why the Affiliates lacked authority. Appellant's Br. 32-38. As previously discussed, this factual issue is not properly before the Court and will not be considered.

[34]    *Rejection Order Hearing Tr.* at 60, *in* Appellant's App. at 1701.

[35]    324 U.S. 100 (1945).

Bankruptcy Act. The Chapter X petition was filed by a stockholder of the corporation and accompanied by an affidavit alleging wrongful conduct by the corporation's directors. Subsequently, the directors on behalf of the corporation brought a motion to dismiss on the grounds that the stockholder was not authorized to file the petition. A hearing was held and the district court dismissed the case. The United States Court of Appeals for the Sixth Circuit reversed, holding that a stockholder is authorized to file a petition on behalf of a corporation when directors refuse to act and the directors "have an interest antagonistic to the corporation."[36] The United States Supreme Court reversed the Sixth Circuit, holding that the Bankruptcy Act does not give stockholders the right to file petitions under Chapter X.[37] The Supreme Court further stated:

> [N]owhere is there any indication that Congress bestowed on the bankruptcy court jurisdiction to determine that those who in fact do not have the authority to speak for the corporation . . . should be empowered to file a petition on behalf of the corporation.[38]

JD Holdings also relies on this Court's opinion in *In re DB Capital Holdings,*

---

[36]   *In re W. Tool & Mfg. Co.*, 142 F.2d 404, 409 (6th Cir 1944), *rev'd sub nom. Price v. Gurney*, 324 U.S. 100, 103 (1945).

[37]   *Price*, 324 U.S. at 104 ("Chapter X provides in § 126 that 'A corporation, or three or more creditors who have claims against a corporation or its property amounting in the aggregate to $5,000 or over, liquidated as to amount and not contingent as to liability, or an indenture trustee where the securities outstanding under the indenture are liquidated as to amount and not contingent as to liability, may, if no other petition by or against such corporation is pending under this chapter, file a petition under this chapter.'").

[38]   *Id.* at 107.

*LLC*.[39] In *DB Capital*, the general partner of a managing entity filed a Chapter 11 bankruptcy petition on behalf of the LLC it managed. One of the LLC members brought a motion to dismiss, arguing that the general partner of the managing entity did not have authority to file the bankruptcy petition. Following an evidentiary hearing, the bankruptcy court granted the motion to dismiss, finding that the controlling operating agreement precluded the general partner of the managing entity from filing for bankruptcy on the LLC's behalf.[40] On appeal, this Court affirmed, holding "[a] bankruptcy case filed on behalf of an entity without authority under state law to act for that entity is improper and must be dismissed."[41]

JD Holdings' reliance on *Price* and *DB Capital* is misplaced. *Price* and *DB Capital* stand for the proposition that a case filed without the proper corporate authority must be dismissed. JD Holdings' reference to jurisdiction in these cases demonstrates that a bankruptcy court cannot retain jurisdiction after it determines

---

[39]     No. CO-10-046, 2010 WL 4925811, at *1 (10th Cir. BAP Dec. 6, 2010) (reviewing a motion to dismiss under § 1112(b) and examining the issue of the authority to file on a debtor's behalf).

[40]     *Id*. at *2. The operating agreement provided that "[t]he Company . . . will not institute proceedings to be adjudicated bankrupt or insolvent; or consent to the institution of bankruptcy or insolvency proceedings against it; or file a petition seeking, or consent to, reorganization or relief under any applicable federal or state law relating to bankruptcy. . . ." *Id.*

[41]     *Id*. (citing *In re Real Homes, LLC*, 352 B.R. 221, 225 (Bankr. D. Idaho 2005)).

the case was filed on behalf of any entity without proper authority. These cases do not address the issue before this Court: whether the bankruptcy court has jurisdiction to consider other matters before resolving whether a debtor is properly in bankruptcy.

Appellees argue *Arbaugh v. Y&H Corp.*[42] is applicable here. We agree. In *Arbaugh*, the plaintiff brought a sexual harassment claim against her former employer under Title VII of the Civil Rights Act. After a two-day trial, the district court found in favor of the plaintiff, awarding actual and punitive damages in the amount of $40,000. Two weeks after judgment was entered, defendant moved to dismiss the case for lack of subject-matter jurisdiction. Defendant argued that it had less than 15 employees and, as a result, was not an employer within the definition of—and could not be sued under—Title VII. On that basis, Defendant argued that the federal court lacked subject-matter jurisdiction. After conducting an evidentiary hearing to determine the number of defendant's employees, the district court found that defendant did in fact have less than fifteen employees, vacated the judgment, and dismissed the case. The United States Court of Appeals for the Fifth Circuit affirmed, holding that the defendant's failure to have the requisite employees to be considered an employer under Title VII deprived the federal court of subject-matter jurisdiction. In a

---

[42]     546 U.S. 500 (2006).

unanimous decision, the United States Supreme Court reversed the Fifth Circuit.[43]

Justice Ginsberg delivered the opinion. She admitted the Supreme Court and other courts have been "less than meticulous"[44] in analyzing whether a law's limitations are jurisdictional. The Court recognized that subject-matter jurisdiction is sometimes

> erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief—a merits-related determination. [Courts] often obscure the issue by stating that the court is dismissing "for lack of jurisdiction" when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim. We have described such unrefined dispositions as "drive-by jurisdictional rulings" that should be accorded "no precedential effect" on the question whether the federal court had authority to adjudicate the claim[.][45]

The Supreme Court held that the issue of whether the defendant qualified as an employer under Title VII related to the merits of the plaintiff's claim, and not to the subject-matter jurisdiction of the federal court. Applying this analysis to the present case, we conclude that the issue of Debtors' eligibility goes to the merits of the Dismissal Motion, and not to the subject-matter jurisdiction of the bankruptcy court.

---

[43] *Id.* The decision was 8-0. Justice Alito took no part in the decision.

[44] *Id.* at 511.

[45] *Id.* (citations omitted).

Further, in *Henderson ex rel. Henderson v. Shinseki*,[46] the United States Supreme Court reviewed whether a procedural Department of Veterans' Affairs' rule was jurisdictional. The Supreme Court acknowledged that, while courts generally address the arguments raised by the parties, federal courts have an independent obligation to review their jurisdiction, and must raise and consider jurisdictional issues, even when overlooked by the litigants. In attempting to "bring some discipline"[47] to the determination of whether a rule is jurisdictional, the Supreme Court recognized that the pivotal question in examining whether a jurisdictional predicate exists "is whether Congress mandated" a limitation to be "jurisdictional."[48] Following *Arbaugh's* precedent, the Supreme Court "look[ed] to see if there [wa]s any 'clear' indication"[49] that Congress wanted the Department of Veterans' Affairs' procedural rule to be jurisdictional and, after analyzing the attributes of the procedural rule, determined that the terms of the rule did not suggest, let alone "provide clear evidence"[50] that the rule "was meant to carry jurisdictional consequences."[51]

---

[46]     562 U.S. 428 (2011).

[47]     *Id.* at 435.

[48]     *Id.*

[49]     *Id.* at 436.

[50]     *Id.* at 438.

[51]     *Id.*

17

Here, the bankruptcy court correctly concluded the authority-to-file limitation is not jurisdictional. The bankruptcy court had subject-matter jurisdiction over the Affiliates regardless of whether the Affiliates' petitions were filed with the proper authority. JD Holdings cites no authority indicating that Congress mandated the authority-to-file limitation to be jurisdictional. Further, the Tenth Circuit has not explicitly addressed the issue of whether the authority-to-file limitation is jurisdictional. *Arbaugh* is applicable and controlling. We find no error in the bankruptcy court's conclusion that it had jurisdiction to consider the Rejection Motion.

The only operative issue in this appeal is whether the rejection of the ROFR by the Debtor was a proper exercise of its business judgment. JD Holdings admits this point. We cannot find error when a bankruptcy court rules in favor of one party on an issue conceded by the opposing party.

**IV. Conclusion**

The Rejection Order is AFFIRMED.

18