**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 12-1662**

---

NATALIA LOPATINA,

Plaintiff - Appellee,

v.

UNITED STATES OF AMERICA,

Defendant - Appellant.

---

Appeal from the United States District Court for the District of
Maryland, at Greenbelt. Charles B. Day, Magistrate Judge.
(8:09-cv-02852-CBD)

---

Argued: May 15, 2013                    Decided: June 14, 2013

---

Before KING and AGEE, Circuit Judges, and David C. NORTON,
United States District Judge for the District of South Carolina,
sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** Jeffrey Eric Sandberg, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Appellant. Ernest W. McIntosh,
Jr., NEWMAN & MCINTOSH, LLC, Washington, D.C., for Appellee. **ON
BRIEF:** Rod J. Rosenstein, United States Attorney, Stuart F.
Delery, Acting Assistant Attorney General, Thomas M. Bondy,
UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Appellant.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Plaintiff-Appellee Natalia Lopatina ("Lopatina") was injured when she was struck by a United States Postal Service ("USPS") truck while riding her bicycle. Lopatina filed an administrative claim with the USPS for $75,750 in damages under the Federal Tort Claims Act ("FTCA"). When that claim was denied, she commenced this action in the United States District Court for the District of Maryland. Following a bench trial, the district court awarded Lopatina $176,132 in damages, concluding that 28 U.S.C. § 2675(b) permitted her to recover damages in excess of her administrative claim because she presented "newly discovered evidence not reasonably discoverable" at the time she filed her claim. The Government appeals, contending that the district court committed errors of law in interpreting and applying 28 U.S.C. § 2675(b). For the reasons that follow, we affirm the judgment of the district court.

I.

A.

The accident occurred on May 30, 2007, in Rockville, Maryland. Lopatina, who had stopped at an intersection, began to cycle through the crosswalk when the light turned green. Allen Wang, a USPS employee acting within the scope of his

2

employment, was stopped at the traffic light in a USPS truck. While looking to the left, he began to make a lawful right turn on red. As his truck moved forward at low speed, it collided with Lopatina, causing her to fall from her bicycle. After the accident, Lopatina was treated at the emergency room for abrasions and scratches.

Two days later, Lopatina went to an urgent-care facility complaining of pain in her left shoulder. The facility referred her to an orthopedic surgeon, Dr. Richard Meyer ("Dr. Meyer"). On June 5, 2007, Dr. Meyer diagnosed Lopatina with, among other things, cervical spine strain and left shoulder sprain. Lopatina underwent physical therapy. Dr. Meyer discharged her after eight weeks, but advised that it might take a year for her shoulder to fully heal. Lopatina did not seek or receive any medical treatment for her shoulder during the ten months that followed—from August 2007 through June 2008.

In March 2008, Lopatina filed an administrative claim with the USPS for injuries allegedly arising from the accident, including to her shoulder. The claim demanded a sum of $75,750, comprising $75,000 in personal injury damages and $750 in property losses. Lopatina certified that she would "agree to accept said amount in full satisfaction and final settlement of this claim." (J.A. 503.)

3

While her administrative claim was pending, Lopatina returned to Dr. Meyer complaining of continued pain in her left shoulder, which had remained symptomatic since the accident. An MRI revealed "mild leading edge supraspinatus tendinosis" in her shoulder—a chronic degenerative condition in the connective tissue of a tendon in the rotator cuff of the shoulder. (J.A. 252, 396, 451.) In July 2008, Dr. Meyer referred Lopatina to another orthopedic surgeon, Dr. Benjamin Shaffer ("Dr. Shaffer"), a "nationally known shoulder expert." (J.A. 252.)

Lopatina first visited Dr. Shaffer in October 2008. At that visit, Dr. Shaffer noted that Lopatina's "left shoulder has been symptomatic since" the accident. (J.A. 284, see also J.A. 421–22.) He speculated that instead of, or in addition to, supraspinatus tendinosis, Lopatina might have sustained a tear to the labrum in her shoulder. Dr. Shaffer "advocated that [Lopatina] consider arthroscopic evaluation with definitive treatment rendered at the time of surgery[,] which might include repair of a labral injury."[1] (J.A. 285.) Lopatina decided not to undergo surgery at that time.

---

[1] The labrum is a cuff of cartilage that rings the interior of the shoulder socket. (J.A. 401.) In contrast to tendinosis or shoulder impingement, which may be caused by any number of factors (including overuse or aging), labral tears are normally caused by trauma. (J.A. 455; see generally J.A. 430–32, 446–56 (discussing possible causes of various shoulder conditions).)

In December 2008, Lopatina sent a supplemented list of damages to the USPS, including medical bills from Dr. Shaffer. However, Lopatina did not amend her administrative claim or otherwise state that she was increasing her sum-certain demand for damages.

Lopatina visited Dr. Shaffer again in April 2009. Dr. Shaffer reiterated his opinion that Lopatina may have sustained a labral tear, and again advised that she was "the perfect candidate for a diagnostic and probable operative arthroscopic evaluation with possible labral repair." (J.A. 288.)

In May 2009, the USPS denied Lopatina's administrative claim, explaining that it could not "keep th[e] claim open for an indefinite amount of time" while she explored further medical treatment. (J.A. 28.) The USPS indicated that it would entertain a request for reconsideration of the claim once Lopatina had "conclude[d] [her] investigation into [her] medical condition." (J.A. 28.)

In July 2009, Dr. Shaffer performed surgery on Lopatina's shoulder. Although he had suspected a labral tear, he discovered during the surgery that the labrum was intact. He instead observed a "partial tearing of the rotator cuff, specifically the supraspinatus [tendon] at the site which had been identified in the MRI." (J.A. 403.) He further identified a shoulder impingement—a "relative narrowing of the space in

5

which the supraspinatus tendon under[goes] normal excursion" during movement of the joint. (J.A. 403-04.) In light of these findings, Dr. Shaffer changed his primary diagnosis from "labral tear" to "subacromial impingement, left shoulder." (J.A. 453.) Dr. Shaffer then proceeded to make several structural repairs to the shoulder joint. After a successful operation, Lopatina obtained follow-up treatment from Dr. Shaffer and completed a course of physical therapy.

A year later, in July 2010, Lopatina returned to Dr. Shaffer with further complaints. Dr. Shaffer opined that her "symptoms [had] evolved in a way that clearly reflects a primary cervical problem" and ordered a new MRI. (J.A. 297.) In August 2010, after reviewing the new MRI, Dr. Shaffer stated that his "working diagnosis" was that Lopatina had "cervical strain/whiplash syndrome." (J.A. 298.) He then referred Lopatina to a spine expert.

Lopatina never provided the USPS with a new administrative demand for damages, including expenses incurred after her surgery with Dr. Shaffer, nor did she seek reconsideration of her prior claim.

B.

In October 2009, Lopatina filed suit under the FTCA in the United States District Court for the District of Maryland. The

parties consented to proceed before a magistrate judge, and a two-day bench trial was held in December 2011. At trial, the Government conceded that the postal driver had been negligent, but contended that Lopatina had also been negligent and that her contributory negligence barred her recovery under Maryland law. The Government also averred that Lopatina had failed to show that her shoulder injury was caused by the May 2007 accident, as opposed to athletic activities or other motor vehicle accidents.

In an oral decision at the close of trial, the district court determined that the postal driver was solely responsible for the May 2007 accident, and that the collision had caused Lopatina's injuries. The court then found that Lopatina had incurred damages of $176,132—medical expenses of $35,164; pain-and-suffering losses of $140,656 (calculated as a multiplier of four times her medical expenses); and property loss of $312. In assessing pain and suffering, the court determined that Lopatina had sustained a "permanent injury" to her shoulder in the sense that she "got scarring" from the surgical incisions. (J.A. 199; see J.A. 403–05.) The court rejected Lopatina's argument, however, that she was entitled to recover any damages for "future pain" or "future medical care and expenses," finding her evidence of such damages to be too speculative. (J.A. 197, 199.)

The Government asserted that Lopatina's aggregate recovery was limited by law to the amount of her administrative claim—$75,750—because under the FTCA, a plaintiff generally may not recover "any sum in excess of the amount of the claim presented to the federal agency." 28 U.S.C. § 2675(b). In response, Lopatina argued that she should be permitted to recover additional damages under the "newly discovered evidence" exception of 28 U.S.C. § 2675(b) because at the time she filed her administrative claim, she was not yet fully aware of the extent or nature of the existing injury to her shoulder.

The district court denied the Government's motion to limit Lopatina's damages to the amount of her administrative claim, ruling instead that Lopatina had satisfied the "newly discovered evidence" exception under 28 U.S.C. § 2675(b). The court found that Lopatina "was not aware of the final diagnoses of her injuries from the accident until after Dr. Shaffer performed surgery on her on July 1, 2009." (J.A. 515.) Additionally, the court found that Lopatina's symptoms had "evolved" after surgery, and that those evolving symptoms might reflect the development of "a primary cervical problem or whiplash syndrome." (J.A. 515.) Based upon those findings, the court concluded that "the diagnoses, treatments of her newly diagnosed conditions, and damages related to these diagnoses are 'newly discovered evidence not reasonably discoverable at the time of

8

presenting the [administrative] claim.'" (J.A. 516.) The court then proceeded to enter judgment for the full amount of damages it had assessed at trial: $176,132.

In January 2012, the Government filed a partial motion for reconsideration directed principally to the calculation of Lopatina's medical expenses. In May 2012, the district court granted the motion and reduced Lopatina's total damages award to $169,518.30.

The Government timely appealed, and the Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

### A.

The FTCA, 28 U.S.C. §§ 1346(b), 2671–2680, governs tort claims for injuries arising from the negligent conduct of federal employees acting within the scope of their employment. A plaintiff proceeding against the United States under the FTCA must first file an administrative claim with the relevant federal agency within two years after the injury. 28 U.S.C. §§ 2401(b), 2675(a). The administrative claim must contain, among other things, a "sum certain" for damages. See 28 U.S.C. § 2675(b); see also 28 C.F.R. § 14.2(a); 39 C.F.R. § 912.5(a). The presentation of an administrative claim containing a sum-certain demand is a jurisdictional prerequisite to suit. See

9

<u>Kokotis v. U.S. Postal Serv.</u>, 223 F.3d 275, 278–79 (4th Cir. 2000). While a claim remains pending with the agency, a claimant may file an amended claim at any time to increase the amount of her sum-certain demand. <u>See</u> 28 C.F.R. § 14.2(c); 39 C.F.R. § 912.5(b)-(c).

If the administrative claim is denied, or if six months elapse without agency action on the claim, a claimant may bring suit in federal court. 28 U.S.C. § 2675(a). The amount of damages that may be recovered is presumptively limited to the "amount of the claim presented to the federal agency." <u>Id.</u> § 2675(b). A plaintiff may, however, recover a "sum in excess" of that claim "where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim." <u>Id.</u> A plaintiff "bear[s] the burden of proving that they are entitled to damages in excess of [their] administrative claim." <u>Spivey v. United States</u>, 912 F.2d 80, 85 (4th Cir. 1990).

## B.

The Government contends that the district court erred in entering judgment for a sum in excess of Lopatina's administrative claim because it failed to find that the

10

"increased amount" of damages sought by Lopatina was "based upon newly discovered evidence." 28 U.S.C. § 2675(b) (emphasis added). Because the Government failed to raise this issue before the district court, however, we affirm the court's judgment.

Notably, at oral argument, the Government conceded it had failed to raise the issue below which it now asserts on appeal. The Government's memorandum of law before the district court regarding the FTCA's limitation on Lopatina's potential recovery markedly failed to include any mention of the argument it now pursues. In the district court, the Government only contended that Lopatina was precluded from receiving an award in excess of the sum-certain amount in her administrative claim. The entirety of the argument section of the Government's trial memorandum reads as follows:

> The plaintiff cannot demonstrate any "newly discovered evidence" or "intervening facts" that could not have been discovered when she supplemented her administrative claim in December 2008. She knew that she had supraspinatus tendinosis and needed surgery when she submitted her supplement. Nonetheless, she declined to increase her sum certain. Accordingly, she is precluded from receiving any award in excess of the $75,750.

(Dist. Ct. Docket No. 45, at 4.)

On appeal in this Court, the Government now argues that the district court committed errors of law in interpreting and applying 28 U.S.C. § 2675(b). Specifically, the Government

11

contends that although the district court found that Lopatina's changing diagnoses constituted "newly discovered evidence" that were "not reasonably discoverable at the time" she presented her administrative claim, the court failed to find that the "increased amount" of damages sought in excess of Lopatina's administrative claim was "based upon" those changed diagnoses. 28 U.S.C. § 2675(b). This is a substantively different argument than the Government's trial position, which was simply that Lopatina was barred from any damages over the administrative claim amount because she failed to amend that claim prior to filing suit.

The Government's failure to raise its new argument in the district court means that this Court will not consider it as a basis to reverse the district court's judgment. "We have repeatedly held that issues raised for the first time on appeal generally will not be considered." Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1227 (4th Cir. 1998); see, e.g., Washington Metro. Area Transit Auth. v. Precision Small Engines, 227 F.3d 224, 227–28 (4th Cir. 2000); Muth v. United States, 1 F.3d 246, 250 (4th Cir. 1993). "Exceptions to this general rule are made only in very limited circumstances, such as where

12

refusal to consider the newly-raised issue would be plain error[2] or would result in a fundamental miscarriage of justice."  Muth, 1 F.3d at 250 (citing Nat'l Wildlife Fed'n v. Hanson, 859 F.2d 313, 318 (4th Cir. 1988)).  We can find no evidence in the record that such circumstances exist here.

Accordingly, because the Government failed to preserve this issue for appeal, we deem the Government's argument waived and thus decline to consider it.  We therefore conclude that the district court's entry of judgment for a sum in excess of Lopatina's administrative claim does not constitute plain error or a fundamental miscarriage of justice.

III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

[2] Applying plain error review, we will not reverse unless the Government can establish: "(1) there is an error; (2) the error is plain; (3) the error affects substantial rights; and (4) the court determines . . . that the error seriously affects the fairness, integrity or public reputation of judicial proceedings."  In re Celotex Corp., 124 F.3d 619, 630–31 (4th Cir. 1997) (citing United States v. Olano, 507 U.S. 725, 730 (1993)).  The Government is unable to show that the district court committed plain error.